T. RAYMOND PIERCE & others *vs.* TOWN OF WELLESLEY.

Norfolk. November 8, 1957. — December 11, 1957.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Zoning. Municipal Corporations,* Parking place. *Constitutional Law,* Zoning, Public purpose.

A provision of the zoning by-law of a suburban town permitting use of premises in the single residence districts for a "municipally owned or operated public parking lot" could not be said to be invalid on the ground that it had no substantial relation to any of the proper objects of zoning [521–522], or that operation of the parking lots by the town would not be for a public purpose [521], or that such provision might result in incidental advantage to the owners and occupants of business properties in the vicinity of the parking lots [522], or that the presence of the parking lots in residential districts might be detrimental to nearby properties [522–523], or that only the town was permitted to operate the parking lots in the residential districts. [523–524]

In passing on the general validity of a provision of a town's zoning by-law relating to all the single residence districts, it was not to be assumed by this court that particular applications of such provision would be arbitrary. [525]

On the issue of the validity of a provision of a town's zoning by-law permitting use of premises in the single residence districts for a "municipally owned or operated public parking lot," evidence that after the adoption of such provision the town rejected a proposal to place a certain area in a zoning district where parking lots could be privately operated as well as town operated was immaterial. [525]

PETITION, filed in the Land Court on March 30, 1956.

The case was heard by *Fenton,* J., who ruled that the amendment to § 2 B 3 of the Wellesley zoning by-law stated in the opinion was valid. The petitioners alleged exceptions.

*Albert Auburn,* for the petitioners.

*William R. Cook,* Town Counsel, for the respondent.

CUTTER, J. The petitioners are owners of freehold estates in possession in properties in Wellesley zoned for single residences. They have filed in the Land Court a petition under G. L. (Ter. Ed.) c. 240, § 14A, and c. 185,

§ 1 (j½),[1] to determine the validity of an amendment to § 2 B 3 of the Wellesley zoning by-law, adopted at a special town meeting on November 28, 1955, which revised that section so as to include among the purposes for which in "single residence districts . . . premises" may be used "3. Public school, municipally owned or operated public parking lot or other public use." The words "municipally owned or operated public parking lot" were added by the amendment, largely because of the decision in the Superior Court reviewed in Berger v. Wellesley, 334 Mass. 193, 195.

The Berger case involved a bill for declaratory relief brought to determine the right of the town, under its then existing zoning by-law, to lease certain land, partly in a single residence district, from a Mrs. Fraser for the purpose of maintaining a municipal parking lot for automobiles. In the Superior Court, on October 13, 1955, by what may have been (and this we need not decide) an unduly restrictive interpretation of the words "other public use" in § 2 B 3 prior to its amendment on November 28, 1955, it was determined that the unamended section did not permit the use of land then proposed. When the matter reached this court, the controversy was dismissed on May 11, 1956, as moot because of the amendment, which had become effective a short time earlier.

The trial judge, in the present case, recited these facts relating to the Berger case and made the following findings. Certain of the petitioners own land "in a single residence district in the Wellesley Square area, near . . . land owned by Helen L. Fraser, which the selectmen of . . . Wellesley were authorized to lease for . . . a municipal parking lot for automobiles." The Wellesley planning board in 1950 caused a study of traffic congestion in Wellesley center to be made by experts, who recommended taking a major part of the block including the Fraser land. There are six municipal parking lots in Wellesley established and enlarged at various times between 1930 and 1953. The planning board recom-

---

[1] Section 14A was inserted by St. 1934, c. 263, § 2.
Clause (j½) was inserted by St. 1934, c. 263, § 1.

mended the adoption of the amendment of § 2 B 3 here under consideration in a report dated November 28, 1955, which stated (1) that the unamended zoning by-law, referring to "public school or other public use," was designed "to permit all needed municipal services throughout all areas in town"; (2) that the by-law had been so understood for many years and had been acted on by the town in establishing playgrounds, police and fire stations, reservoirs, schools, and certain of the municipal parking lots; and (3) that the decision of the Superior Court in the *Berger* case had cast doubt on the long continued construction, thus (a) making "presumably . . . illegally operated" four of the town's then existing parking areas and (b) indicating that the operation of a parking lot on the Fraser area would be illegal if such a parking lot were to be constructed. A majority of the town advisory committee felt that the proposed amendment was unnecessary and that the problem could be met by a rezoning of the area affected by the proposal to lease the Fraser land. A minority of the advisory committee in effect agreed with the planning board. The selectmen favored the amendment. The amendment was adopted by a special town meeting on November 28, 1955, and at that meeting it was also voted to confirm and renew authority previously granted to the selectmen to lease[2] the Fraser land for the purpose of maintaining a municipal parking lot. The trial judge could also have found on the evidence that the town, in the Wellesley Square area, has had trouble with traffic and parking congestion which extends to the residential area behind the business zone and blights the residential area.

The petitioners saved an exception to the refusal to ad-

[2] Under the proposed lease the proposed parking lot was to be acquired by the lessor and put in condition by her. The town was to pay the proceeds of the meters as rent out of which the lessor was to pay taxes and interest and instalments of principal upon a mortgage by which purchase and construction of the lot (apparently without profit to her) were to be financed by the lessor. The town was to have an option to purchase the land at the amount still due upon the mortgage at the time of purchase. All rent payments not needed for current charges were to be applied in reduction of the mortgage and when the mortgage was paid, the lot was to become the property of the town.

mit certain evidence (later discussed) and, also, at the close
of the evidence, the petitioners requested rulings of law in
general (1) that § 2 B 3, particularly in respect of its reser-
vation to the town of what was in effect an exclusive privilege
of operating parking lots in residence areas, was invalid
(a) because arbitrary, unreasonable, and discriminatory,
(b) because bearing no substantial relation to the promo-
tion of public health, welfare, safety, convenience or morals,
and (c) because parking lot operation is not a governmental
function (requests numbered 1, 2, 5, 6, 11); and (2) that
the town as lessee under the zoning by-law has only the
rights to use land which the owner has (requests 7, 9, 10).
The petitioners saved exceptions to the trial judge's refusal
to grant such requests which he declined to give "because
they are either unnecessary, immaterial, inapplicable, con-
trary to the facts found by . . . [him] or contrary to law."
Two other requests (numbered 4, 8), also not given, are dis-
cussed later. The case is here on the petitioners' bill of
exceptions.

Although the petition seeks a declaration of rights and
injunctions based on the alleged general invalidity of the
amendment of § 2 B 3 of the zoning by-law, the bill of ex-
ceptions indicates that the controversy arose principally
because of the proposal of the town to lease the Fraser land.
It could have been found (a) that Mrs. Fraser controlled
property in the Wellesley Square area, in part leased to
Wm. Filene's Sons Company and in part used for other
purposes; (b) that Filene's had long been worried about
parking because "they cannot exist without it"; (c) that
the Filene's lease was valuable to the town; (d) that Mr.
Fraser, a member of the Wellesley planning board, was
active, in the interest of himself and the town, in pressing
for an arrangement by which Mrs. Fraser would make
available land directly behind the Filene's store for lease by
the town under the arrangement already described (see
note 2, supra); (e) that it would not be desirable to use for
parking other land in the business district "because the
business areas in Wellesley are very . . . few and . . .

small . . . [and] should be used entirely for business"; (f) that there was another parking lot "considerably more than 75 yards from the" proposed Fraser parking lot, which was not fully used except on Saturday afternoons and at Christmas; and (g) that the "local condition . . . which would warrant the establishment of the Fraser parking lot was the very heavily travelled business area in the near vicinity."

1. "Every presumption is to be made in favor of" the amended § 2 B 3. "The fact that the question is debatable does not empower the court to substitute its judgment" for that of the town. *Cohen* v. *Lynn*, 333 Mass. 699, 705, and cases cited. The validity of the amendment must be sustained unless the petitioners sustain the heavy burden of showing that it is in conflict (a) with the provisions of G. L. (Ter. Ed.) c. 40A, inserted by St. 1954, c. 368, § 2 (authorizing towns to enact zoning by-laws), or (b) with applicable constitutional provisions, on the ground that "there is no substantial relation between it and the further-ance of any of the general objects" (see *Lundy* v. *Wayland*, 328 Mass. 581, 583, and cases cited) stated in the enabling legislation. These objects (see G. L. [Ter. Ed.] c. 40A, § 3) are (in part) "to lessen congestion in the streets; to conserve health; to secure safety from fire . . . and other dangers; . . . to facilitate the adequate provision of trans-portation . . . schools, parks and other public require-ments; to conserve the value of land and buildings; to encourage the most appropriate use of land . . . ; and to preserve and increase its amenities."

It is now well settled that the "provision of off-street parking spaces is a public purpose" under modern condi-tions. *Tate* v. *Malden*, 334 Mass. 507, 508. *Cabot* v. *As-sessors of Boston*, 335 Mass. 53, 64. As a general principle, and in the light of the testimony about the specific traffic congestion in or near the present or proposed Wellesley town parking lots, this court cannot say that the town meeting was arbitrary and unreasonable in revising its zoning by-law so as clearly to permit town parking lots

even in residence zones. Whether the public necessity for traffic relief extended to residence zones, as well as to all other parts of the town, was a matter for the legislative determination of the town meeting, the members of which could exercise judgment in the light of their special knowledge of conditions in the town. See *Burnham* v. *Board of Appeals of Gloucester,* 333 Mass. 114, 117; *Concord* v. *Attorney General, ante,* 17, 24–25. They had the benefit also of cumulative knowledge gained from the studies of the town's traffic situation already mentioned. They were entitled, unless without reasonable basis for their decision, to choose among the several possible solutions of their traffic and parking problem. The trial judge had before him evidence that residence areas near the business zone suffered from parking by persons using the business zone. The facts underlying this evidence presumably were known to the town meeting members and, on these facts, they could reasonably decide to reduce parking on the streets in the residence areas by providing for off-street parking lots in those same areas.

It is, of course, no objection to an honest legislative solution of a public problem that it will incidentally lead to private profit or advantage. See *Court Street Parking Co.* v. *Boston, ante,* 224, 229–230. Accordingly, the amendment of § 2 B 3 is not invalid because it would assist the owners of nearby business properties and others to retain tenants and help such tenants to attract customers to their stores. There is nothing in the facts appearing here, with respect to the proposed Fraser parking lot, which affects the general validity of § 2 B 3, and, on this record, we see no basis for contending that specific application of the amendment to the Fraser lot would deprive the petitioners of any constitutional right. Indeed the evidence directly relating to the need for the Fraser parking lot in the public interest tends to support the view that the amendment was permissible.

The fact that parking lots in residential areas would be a detriment to some adjacent properties (see *Spector* v. *Build-*

*ing Inspector of Milton*, 250 Mass. 63, 70; *Wilbur* v. *Newton*, 302 Mass. 38, 43) also does not invalidate a town policy of permitting such parking lots for good public reasons by a generally applicable, nondiscriminatory zoning by-law. It was for the town meeting members to determine whether the public advantage in permitting this type of activity in residence areas outweighed the disadvantages, and, in deciding as they did, they did not exceed their authority. *Burnham* v. *Board of Appeals of Gloucester*, 333 Mass. 114, 116–117 (wisdom of policy of permitting motels in residence zones held to be for the local legislative body).

The petitioners also contend that the amendment is invalid because it permits only the town to maintain parking lots in residence areas. The town's reservation to itself of this monopoly by an appropriate zoning provision cannot be said to bear no reasonable relation to the public interest. The evidence shows a long continued town policy of operating town parking lots beginning in 1930. By reserving to itself the privilege of operating such lots in residence areas, the town retained complete control (through its town meeting, a public body) of a type of operation, which, if generally permitted in residence areas, might do damage to the whole zoning scheme. It could be found that the amendment was designed to enable the town meeting itself to restrict such town parking lots to those parts of residence areas close to business areas, where presumably the public need would be greatest and any resulting damage to residential property least burdensome. To be sure, the town might have avoided a wholesale invasion of residence areas by parking lots if it had established a by-law allowing such lots only after the granting of a permit in each particular case, as in the provision with respect to motels considered in the *Burnham* case (333 Mass. 114). The town, however, was not limited to this method of preventing widespread invasion of residential areas by parking lots.

Although the town was bound to comply with any general provision of its zoning by-law applicable to it (*Building Commissioner of Medford* v. *C. & H. Co.* 319 Mass. 273, 283),

here the amendment of § 2 B 3 exempted the town itself from the restriction against parking lots applicable to other operators. Since there was a rational basis for this exemption (the retention of control of residential area parking lots in the town itself) we think the special exemption in favor of the town was valid under the principles discussed in *Sellors* v. *Concord*, 329 Mass. 259, 262 (where not only was the validity of an existing zoning by-law provision for special permits for municipal uses assumed, but also it was said that "the town . . . [could] amend the by-law to permit the uses" for which it had taken certain land).

When a town proceeds to operate a parking lot to relieve a public need (*Tate* v. *Malden*, 334 Mass. 507, 508), it is acting in aid of its power to maintain highways (see *Pelletier* v. *Beverly*, 292 Mass. 468, 469) and essentially in at least a quasi governmental capacity, well beyond (compare *MacRae* v. *Selectmen of Concord*, 296 Mass. 394, 396–399) merely engaging in a private business venture of a proprietary character. As has been indicated above, the town in framing its zoning by-law may reasonably permit itself to carry on this quasi governmental activity in areas where it is unwilling to permit private individuals to do so,[3] with the result that the town operating a leased parking lot may have rights in excess of those which its private lessor would have. If there is anything to the contrary in *Mayor & City Council of Baltimore* v. *Linthicum*, 170 Md. 245, 250, upon which the petitioners rely, we decline to follow it. This is not a case like *Spies* v. *Board of Appeals*, 337 Ill. 507, 511–514, where the town in effect delegated its powers to permit noninjurious nonconforming uses to a stated percentage of the owners in a particular area. Here the town reserved to itself, acting through its governing body, the town meeting members, the privilege of carrying on town functions in any zone in the town. The trial judge properly refused the requests for rulings which have already been summarized.

---

[3] For decisions in other States which tend to support this view, see *Sunny Slope Water Co.* v. *Pasadena*, 1 Cal. (2d) 87, 98; *Cincinnati* v. *Wegehoft*, 119 Ohio St. 136, 137–138; *Lees* v. *Sampson Land Co.* 372 Pa. 126, 129–132.

The petitioners also requested rulings (numbered 4, 8), in effect that the establishment of parking lots arbitrarily in residential zones detracts from the value of abutting lots and takes property without due process of law for the benefit of business areas. These requests, even to the extent that they may state correct principles of law, are clearly inapplicable to the facts found by the trial judge and wholly irrelevant in passing on the general validity of the amendment of § 2 B 3. Since the amendment is of general application, this court will not assume that individual applications of its provisions will be made arbitrarily, particularly where it appears that there is a reasonable basis for its enactment.

2. The petitioners offered to show (a) that the proposal set out in an article in the warrant for the 1956 annual town meeting, if adopted, would have placed an area, which included the Fraser site, within a zone where parking lots could be operated by persons other than the town, as well as by the town, and (b) that the proposal was defeated at the meeting. The offered evidence was wholly immaterial to the validity of the amendment of § 2 B 3 which permitted only town operation.

*Exceptions overruled.*