RUTH I. LANNER *vs.* BOARD OF APPEAL OF TEWKSBURY & others.

Middlesex.     October 7, 1964. — December 8, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Zoning,* Spot zoning; Validity; Reclassification; Board of appeals: appeal to board.

The issuance of a building permit by a town's inspector of buildings was an "order or decision" of the inspector from which an appeal to the zoning board of appeals by an allegedly aggrieved neighboring landowner lay under G. L. c. 40A, § 13, as appearing in St. 1955, c. 325, § 1.   [223]

On the facts, invalidity on the ground of spot zoning was not shown in an amendment of a town's zoning by-law changing from a general residence and farm district to a local business district five acres of a forty-five acre farm situated adjacent to the junction of two heavily traveled roads in an area shifting from rural farming use to residential use and distant several miles from the nearest shopping centers.   [223, 228–230]

BILL IN EQUITY filed in the Superior Court on August 25, 1961.

The suit was heard by *Pecce,* J.

*P. Harold Ready* for the plaintiff.

*Warren W. Allgrove,* Town Counsel, for the Board of Appeal of Tewksbury & another.

*Arthur L. Eno, Jr. (Alphee J. Achin* with him) for Carl S. Garabedian & another.

KIRK, J.   This bill in equity under G. L. c. 40A, § 21, is in the nature of an appeal from a decision of the board of appeal (the board) of the town of Tewksbury (the town) which upheld the validity of a permit issued under an amended zoning by-law by the inspector of buildings (the inspector) authorizing the construction of a super market and shopping center at the locus, an area facing the junction of River Road and Andover Street in that part of the town known as North Tewksbury.

The plaintiff Lanner, the owner of land with dwelling nearest to the locus, appeals from a decree of the Superior Court that the board, to which the plaintiff appealed under G. L. c. 40A, § 13, did not exceed its authority and that no modification of its decision was required.   In addition to the board, the defendants are Carl S. and Mary Garabedian (Garabedian) and Daniel E. Rothenberg (Rothenberg), the sellers and buyer, respectively, of the locus under a purchase and sale agreement.   The building permit was issued to Garabedian and Rothenberg on May 22, 1961, and the appeal was taken to the board on May 29, 1961.

We deal first with the contention, made by the board for the first time in its argument before us, that the board was without jurisdiction under G. L. c. 40A, § 13, to hear Lanner's appeal of May 29, 1961, and that in consequence the proceedings thereafter pursued by Lanner are unavailing. It is provided in G. L. c. 40A, § 13, that " [a]n appeal to the board of appeals established under section fourteen may be taken . . . by any person aggrieved by any order or decision of the inspector of buildings or other administrative official in violation of any provision of this chapter, or any ordinance or by-law adopted thereunder.''   The board argues that the issuance of a building permit is not an " order or decision of the inspector of buildings'' and therefore not appealable to it.   We do not agree.   The issue was squarely met and decided in *Colabufalo* v. *Board of Appeal of Newton*, 336 Mass. 213, where the buildings commissioner issued a permit for the construction of work buildings in a residence district.   There the plaintiff, contending that the

building permit was invalid because the variance under which it was issued was invalid, appealed to the board of appeal and ultimately to this court which said at pages 216–217, "The plaintiff by virtue of G. L. (Ter. Ed.) c. 40A, § 13, as appearing in St. 1955, c. 325, § 1, had a right of appeal, and did appeal, to the board of appeal from the *decision* of the buildings commissioner, and under § 21 he had an appeal to the Superior Court from the decision of the board" (emphasis supplied). In *Tracy* v. *Board of Appeals of Marblehead,* 339 Mass. 205, it appears at page 206 that the procedural steps taken to test the validity of the building permit granted by the building inspector under a challenged zoning by-law were the same as those taken in the *Colabufalo* case and in the case before us. The propriety of the procedure was not questioned by the parties or by the court.

None of the cases cited by the board in support of its contention derogates from the holding in the *Colabufalo* case. In none of them was there a determination that the issuance of a building permit by a building inspector could not be appealed to the board of appeals under G. L. c. 40A, § 13. Almost all of them were petitions for a writ of mandamus, calling for the enforcement of a zoning ordinance or by-law, and discussion of G. L. c. 40A, § 13, was incidental to a determination that mandamus was the proper, if not the only, remedy available in the particular case. Thus, in *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, a petition for a writ of mandamus, where work under a previously issued permit had been stopped the subsequent *removal* of the stop order either by physical act or informal communication of the building inspector to the owner was held not to be an "order or decision" contemplated by the Legislature as the basis for an appeal under G. L. c. 40A, § 13; hence, relief by mandamus was proper. In *Dodge* v. *Inspector of Bldgs. of Newburyport,* 340 Mass. 382, also a petition for a writ of mandamus, the failure to appeal from the issuance of a building permit under G. L. c. 40A, § 13, did not bar mandamus in circumstances where neither the permit nor the application reasonably foretold that the re-

modelling of the interior of a dwelling would result in the conversion and use of the first floor as a drug store in violation of the zoning ordinance. In *Williams* v. *Inspector of Bldgs. of Belmont,* 341 Mass. 188, a petition for a writ of mandamus, no building permit was requested, issued or denied but it was recognized that "questions of enforcement . . . will come before the local board of appeals [under G. L. c. 40A, § 13] if a permit is granted or denied." In *Hinves* v. *Commissioner of Pub. Works of Fall River,* 342 Mass. 54, a petition for a writ of mandamus was granted for the enforcement of a zoning ordinance against a change in an existing nonconforming use when the commissioner took no action whatever on the petitioner's request for action, thus making no order or decision from which an appeal could be taken under G. L. c. 40A, § 13.

The cases of *Kolodny* v. *Board of Appeals of Brookline,* 346 Mass. 285, and *Gamer* v. *Zoning Bd. of Appeals of Newton,* 346 Mass. 648, cited by the defendant board, have no bearing on the issue now being discussed. No question has here been raised as to the timeliness of the plaintiff's appeal to the board.

Accordingly, we affirm our holding in *Colabufalo* v. *Board of Appeal of Newton,* 336 Mass. 213, 216–217, that the issuance of the building permit was an order or decision of the building inspector which the board had jurisdiction to hear on an appeal seasonably taken under G. L. c. 40A, § 13.

We turn to the substantive issue which is whether an amendment adopted in 1961 to the zoning by-law, changing five acres (the locus) of a forty-five acre farm from a general residence and farm district to a local business district, is invalid under the provisions of G. L. c. 40A, § 2.[1]

Specifically, and solely, Lanner contends that the amend-

---

[1] General Laws c. 40A, § 2, provides: "For the purpose of promoting the health, safety, convenience, morals or welfare of its inhabitants . . . any town, may by a zoning . . . by-law . . . divide the municipality into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this chapter, and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, and structures, or use of land . . . . Due regard shall be paid to the characteristics of the different parts of the . . . town, and the zoning regulations in any . . . town shall be the same for zones, districts or streets having substantially the same character."

ment singles out the locus for restrictions less onerous than those imposed on other land in the district whose characteristics are the same as the locus, and that in consequence the amendment is invalid as spot zoning.

The judge made detailed findings of fact. The evidence, including maps, photographs and survey data, is reported. We state the relevant facts found by the judge, in so far as they are supported by the evidence, and supplement them by such other and additional facts as we deem to be justified by the evidence. *Hanrihan* v. *Hanrihan*, 342 Mass. 559, 564, and cases cited.

First, a description of the physical features of the area in general.[2] North Tewksbury, one of the six subdivisions or sections of the town, is in the northwest corner. It is contiguous to the city of Lowell on the west, extends to the Merrimack River on the north and to the Andover town line on the northeast. Although its area (3,800 acres) is only slightly less than the largest section of the town, North Tewksbury has the smallest built up area (210 acres); the greatest area of wet lands (1,160 acres); the largest acreage of steep slopes (460 acres); and the largest area available for residential use (1,620 acres). In contrast to other sections of the town where the terrain (except for swampy areas) is fairly level and the soil sandy, North Tewksbury is mainly rolling or hilly country with boulders and outcroppings of rock. No other section exceeds, and only one equals, its potential growth in dwelling units.

The Garabedian property, with which we are particularly concerned, consists of forty-five acres. It is in the northwest corner of North Tewksbury, and thus is bounded by the Lowell city line on the west and the Merrimack River on the north. On the east it is bounded by the property of other owners, including Lanner. On the southwest, for approximately 120 feet, measured east from the Lowell line, it is bounded by and fronts on Andover Street, otherwise known as Route 133, which in a generally west-east direction runs from the center of Lowell through Tewksbury and Andover into Lawrence. On the southeast the property is

---

[2] See accompanying plan.

bounded by and fronts upon River Road which from its be-
ginning (at the point 120 feet east of the Lowell line) runs
northeasterly through Andover into Lawrence. Both An-
dover Street and River Road are heavily traveled. The
angle formed by the junction of the two roads is approxi-
mately forty-five degrees and points to the west. The locus
(five acre plot) which has been cut out of the Garabedian
property for a local business district is in the southwest
corner of the Garabedian property, and hence is bounded
on the west by the Lowell line, on the southwest and south-
east by the two roads above described, and on the north and

east by the remaining property of Garabedian.   The entire
Garabedian tract is fairly level from the roadways to the
river.   To the east for several hundred yards on River
Road the terrain rises perceptibly and then drops off
sharply as it nears a watercourse known as Trull Brook.

Next we state the land uses.   The first zoning by-law of
the town, adopted in 1947, restricted the entire town for
general residence and farm uses.   At the time of its adop-
tion, there were in North Tewksbury a few small businesses,
which continued as nonconforming uses.   One of these was
a store, on the south side of Andover Street, directly across
from the Garabedian property, where farm machinery was
sold.   Immediately east of the store was the Longmeadow
golf course and, beyond it, a mile east of the locus, a garage
in North Tewksbury center.   Along River Road were green-
houses, and some shops or stands where flowers, plants
and shrubs were sold.   Apart from these there were no
nonconforming uses in the area under the original zoning
by-law.   The remaining land was used for residences and
farming.

Since the adoption of the 1947 zoning by-law some changes
in use have taken place in the area.   An underground gas
transmission line from the Merrimack River has been laid
across the Garabedian property and continues south across
River Road and Andover Street.   Garabedian, under a per-
mit, has operated a roadside stand on Andover Street where
he sells the products of his farm, as well as fruit, eggs,
milk and confections.   A one acre lot in the interior angle
formed by the convergence of River Road and Andover
Street, by an amendment in 1954 to the zoning by-law, was
set apart as a light industry district, where a motor vehicle
filling and service station, with stalls for two cars, was
erected, and is still in operation.   A seventy-five acre ceme-
tery was authorized and is now in use on the north side of
River Road.   It abuts on the Lanner property near the
road, and in the rear it adjoins the Garabedian property.
East of the cemetery on River Road there are several resi-
dences.   Beyond them to the east, a privately owned tract

of 150 acres is being converted, under a variance granted in June, 1962, to a recreation area for public use, including a golf course, tennis courts, and facilities for water sports and nonalcoholic refreshments. The south side of River Road is occupied by residences. Andover Street remains essentially unchanged since 1947 with the exception that the farm implement store across from the Garabedian property near the Lowell line has, under a variance granted in July, 1962, been converted to a drug store.

Since 1952, there has been a substantial increase in the population of the town which has resulted in an increase in the number of new dwellings constructed in the North Tewksbury section. In 1952, there were 260 voters living on seven streets in North Tewksbury. In 1962, there were 508 voters on fourteen streets. There is a strong likelihood that the growing trend will continue at an accelerated rate as the construction of new roads under both State and Federal auspices progresses through the town. The nearest retail stores in Tewksbury, other than Garabedian's stand, are three miles from the locus. In Lowell, the nearest shops are three miles away.

It is pertinent to note that in 1958 a group of consultants submitted to the planning board of the town a draft proposal for the rezoning of the entire town. The proposal was based upon detailed studies which were appended to the group's report. The planning board recommended that the draft zoning by-law be adopted. The town meeting in March, 1959, rejected the recommendation. The rejected proposed by-law provided for a single business district in North Tewksbury on both sides of Andover Street for a depth of 300 feet and for a distance of 2,800 feet measured from the Lowell line.

Thus it appears from the foregoing resumé of land uses and zoning affecting North Tewksbury that only one business district consisting of five acres has been created and only one light industry district consisting of one acre has been established.

The amendment which is now in issue was favored by more than seventy-five per cent of the voters at the town

meeting in March, 1961. The validity of the amendment establishing the business district is the problem presented.

We need refer but briefly to the principles hitherto fully and frequently stated by this court which govern our consideration of the contested issue. "Zoning has always been treated as a local matter. The creation and modification of zones are matters of municipal legislation." *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557. Every presumption is to be made in favor of the amendment and its validity will be upheld unless it is shown beyond reasonable doubt that it conflicts with the enabling act. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594. *Lundy* v. *Wayland,* 328 Mass. 581, 583. If a regulation is within the scope of the enabling statute it is good even though it may adversely affect the value of some other properties in the vicinity of a newly created zone. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594. In debatable cases the court will not substitute its judgment for that of the town. *Cohen* v. *Lynn,* 333 Mass. 699, 705, and cases cited. On the other hand, the amending power may not be invoked solely to confer an economic benefit upon the owner of a comparatively small area within an essentially residential district. *Leahy* v. *Inspector of Bldgs. of New Bedford,* 308 Mass. 128, 132–133. *Whittemore* v. *Building Inspector of Falmouth,* 313 Mass. 248, 249. The test is whether there has been shown any substantial relation between the amendment and the furtherance of any of the general objects of the enabling act. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 593. *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 545. The promotion of the public welfare, as that term is fairly broadly construed, is chief among the purposes of the enabling statute. *Phillips* v. *Board of Appeals of the Bldg. Dept. of Springfield,* 286 Mass. 469, 472. *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 593. *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 545.

Viewing the facts in the light of the stated principles we think that the amendment is valid. The evidence clearly shows that, within the framework of the original by-law of

1947, a definite change has been taking place in the character of the community during the past few years. The change, not currently uncommon, consists in the marked and growing shift in the use of land in a rural area from farming to residence, induced by an influx of people to whom the area has become easily accessible by motor because of new highway construction. In these circumstances it is proper for a town to review its zoning regulations, to take into account its probable future development, and to plan for the welfare of its inhabitants, present and future. See *Wilbur v. Newton,* 302 Mass. 38, 42; *Cohen* v. *Lynn,* 333 Mass. 699, 704; *Caputo* v. *Board of Appeals of Somerville,* 331 Mass. 547, 549, and cases cited. Small business areas with food stores and shops are often a convenience and sometimes a necessity in or near a large residential area. See *Marblehead* v. *Rosenthal,* 316 Mass. 124, 126. Municipal planning for this purpose cannot be said to be incompatible with the promotion of the public welfare. Prudence suggests that, in a community changing in character from rural to residential, provision for purposes which promote the public welfare be made before the concentration of residences in a particular area restricts or eliminates the choice of locations. Once it is established that the purpose of the amendment is to promote the public welfare, the desirability or the necessity of using a particular locus, as compared with other sites, to accomplish the purpose is a matter to be decided by the local legislative body. *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 547. The size of the area to be set aside for the purpose is likewise a matter of local judgment. In the instant case, although it is obvious that Garabedian stands to gain an economic advantage over other property owners by the adoption of the amendment, it "does not appear that there was 'a singling out of one lot for different treatment from that accorded to similar surrounding land indistinguishable from it in character, *all* for the economic benefit of the owner of that lot' " (emphasis supplied). *Marblehead* v. *Rosenthal,* 316 Mass. 124, 126, and cases cited. It is no objection to a legislative solution of a public problem that

it will incidentally lead to private profit or advantage. *Pierce* v. *Wellesley,* 336 Mass. 517, 522. The vote of the townspeople on the specific amendment emphasizes a genuine and general public interest in the establishment of the local business district transcending any concern for Garabedian's private advantage. See *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 412. Collaterally, it may be noted that the locus is on unoccupied, level land, accessible to the residents of North Tewksbury and elsewhere by the existing road net, and except for the Lanner property, does not adjoin or abut upon property used for residence.

*Decree affirmed.*