THOMAS KENNEDY & others *vs.* BUILDING INSPECTOR OF RANDOLPH & another.

Norfolk.    December 8, 1966. — January 5, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Zoning*, Spot zoning, Reclassification, Enforcement.  *Mandamus.*

A neighbor of a parcel of land in a town was entitled to seek a writ of mandamus compelling the building inspector to enforce, as to that parcel, the town's zoning by-law as in effect prior to an amendment thereof. [553]

Public interest in the promotion of parking convenience and fire safety warranted a conclusion that an amendment of a town's zoning by-law, changing a small parcel of land from residential use to industrial use "for daytime parking only," was not invalid as spot zoning where it appeared that the parcel was located in the center of the town in a

Kennedy v. Building Inspector of Randolph.

triangular area the outer border of which was almost wholly zoned for residential use and the interior of which was zoned for industrial use and was occupied by a large factory, that for some years preceding adoption of the amendment there had been a great increase in the number of factory employees, in the population of the town, in parking congestion, and in the standing of vehicles on streets adjoining the factory, that the factory had acquired the parcel to enlarge its existing, inadequate parking area, and that emergency access to the parcel from an abutting street had been afforded the fire department. [554]

PETITION for writ of mandamus filed in the Superior Court on January 9, 1964.

Randolph Manufacturing Co., Inc., was allowed to intervene. The case was heard by *Rose, J.*

*Cortland A. Mathers,* for the petitioners, submitted a brief.

*William J. Carr* for the respondent Building Inspector of Randolph.

*Julius Thannhauser* for the intervener.

CUTTER, J. By this petition certain owners of property near the locus (mentioned below) seek by mandamus to compel the building inspector (a) to enforce the Randolph zoning by-law (adopted in 1939 and amended on various occasions thereafter) as it read prior to its amendment by a special town meeting on September 16, 1963, and (b) to prevent the use of 26,830 square feet of land (the locus) on South Street for other than residential purposes. The locus, a single parcel, was rezoned at the town meeting from its former classification as residential to make it available for industrial use, with the requirement that "the land be used for daytime parking only, and that access and egress to South Street be strictly prohibited." No other rezoning of residential property took place at this meeting.

The locus is in a triangular area in the center of Randolph, the northern apex of which is occupied by the Town Hall. The northeasterly side of the triangle abuts principally on South Street and on a small segment of Union Street. South Main Street and Maple Street bound the triangle on its northwesterly and southerly sides, respectively. Prior to the 1963 rezoning of the locus, all land areas along

the South Street and Maple Street sides of the triangle and most of the triangle land along South Main Street, were zoned for residential use. The residential part of the triangle, prior to the 1963 zoning change for the locus, was occupied by dwellings, except for the Town Hall. A small part of the triangle on South Main Street near the Town Hall and the area near the center of the triangle were zoned for industrial use and were occupied by Randolph Manufacturing Co., Inc. (the intervener), which has been allowed to intervene.

The locus is adjacent to 165,443 square feet of other land in the interior of the triangle owned by the intervener, all zoned for industry. All but 39,664 square feet of this land has been acquired by the intervener since 1951. During this period the intervener's factory, the largest in Randolph, has expanded from twenty-eight employees to over 1,500 workers. In the same period the town's population has grown from 7,500 to over 23,000. Parking congestion has increased. The intervener has provided a parking area for 500 employees, but this is inadequate. There is much standing of vehicles, apparently by the intervener's employees, on adjoining streets near the business center of the town.

The locus was acquired by the intervener to add space for fifty automobiles to the parking area. It has been leveled and fenced. It has also been "landscaped" on the South Street side except where a locked gate has been installed to afford the fire department emergency access, thus improving fire protection. A vacant, boarded-up dwelling on the locus, condemned by the board of health, has been burned. The locus has been used for parking since the 1963 amendment of the zoning by-law.

The trial judge made findings (adopted by him as a report of material facts) of the principal facts stated above. He ruled that the promotion of fire safety and parking convenience was in the public interest. He also ruled that the zoning amendment affecting the locus was valid, was authorized by the applicable statutes, and was consistent with

the purpose of the town zoning by-law to promote "the health, safety, convenience, morals or welfare . . . by lessening congestion in the streets [and] securing safety from fires." He ordered the petition dismissed. The petitioners appealed. The evidence is reported.[1]

1. The petitioners were entitled to proceed by mandamus. *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 519, 522. See *Woods* v. *Newton,* 349 Mass. 373, 378–380.

2. The petitioners contend that the 1963 rezoning of the locus is "spot zoning" and permits an unwarranted extension of an industrial use into a residential zone which, so they contend, has not changed materially since the residential zoning was originally adopted (see fn. 1). They rely on *Whittemore* v. *Building Inspector of Falmouth,* 313 Mass. 248, 249, *Smith* v. *Board of Appeals of Salem,* 313 Mass. 622, 624–625, and *McHugh* v. *Board of Zoning Adjustment of Boston,* 336 Mass. 682, 688–689.

The building inspector and the intervener take the position (1) that there is a presumption in favor of the validity of an amendment by the town meeting and the amendment will be upheld unless it is shown plainly to conflict with the enabling statute; see *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 413–414; *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228; (2) that the amendment promoted the public interest, especially in fire protection and in reduction of traffic congestion and street parking; see *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 544–547; see also *Pierce* v. *Wellesley,* 336 Mass. 517, 521; (3) that there was no "mere arbitrary exercise of power having no substantial relation to" the proper objects of zoning, but a deliberate decision that public needs would be met by the change; see the *Lamarre* case, 324 Mass. 542, 545; *Shannon* v. *Building Inspec-*

---

[1] There is evidence (a) that the intervener's industrial land in the triangle was adjacent on the South Street and Maple Street sides to residential properties, largely owner-occupied, well maintained, one and two-family houses, and (b) that the appearance of South Street had not changed materially in recent years.

*tor of Woburn,* 328 Mass. 633, 636–637; and (4) that the small extension of the boundary of the industrial zone was in the circumstances reasonable and well justified. *Muto* v. *Springfield,* 349 Mass. 479, 482–483. See *Coleman* v. *Selectmen of Andover, ante,* 546.

The case is governed by the decisions relied upon by the building inspector and the intervener. The trial judge correctly concluded that the aspects of the public interest already mentioned gave warrant for the 1963 amendment. The triangle, with the area near its outer border in a residential zone and its interior in an industrial zone, was unusual. It was unusual also that a large factory had long existed so close to the business center of a town. The rapid growth of the factory in the industrial center of the triangle in itself constituted a change of conditions which inevitably affected the residential periphery and use of, and parking upon, the adjacent streets. We cannot say that, in this situation, the town meeting exceeded its legislative powers in attempting by the 1963 amendment to alleviate the detrimental public consequences of the changed conditions.

*Order for judgment affirmed.*