RICHARD N. RAYMOND & others *vs.* BUILDING INSPECTOR
OF BRIMFIELD & another.[1]

Hampden.    February 20, 1974. — February 5, 1975.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Zoning,* Validity, Spot zoning.

On the facts, invalidity on the ground of spot zoning was not shown
in an amendment of a town's zoning by-law changing from an agri-
cultural-residential district to an industrial district the site of the
town's only industry, which had been devoted to its business as a
nonconforming use, in order to permit the industry to expand. [39-
43]

PETITION for a writ of mandamus filed in the Superior
Court on April 10, 1972.

The case was heard by *Moriarty,* J.

*James H. Tourtelotte* for the petitioners.

*Michael J. Morrill,* Town Counsel, for the Building
Inspector of Brimfield & another.

GOODMAN, J.    This is a petition for a writ of mandamus
brought by owners of property abutting or in the vicinity
of the locus (hereinafter described) alleging that an amend-
ment to the zoning by-law of the town of Brimfield, adopted
on December 29, 1971, is invalid as spot zoning and praying
that the respondent building inspector be ordered to en-
force the by-law as it existed prior to the amendment and
that the town clerk be ordered to expunge the amendment
from the town's records and zoning map. The trial judge
made "Findings, Rulings, and [an] Order for Judgment"
based on a stipulation, documents, and a view (see *LaCroix*
v. *Zoning Bd. of Appeals of Methuen,* 344 Mass. 489, 490

---

[1] Town clerk of Brimfield.

[1962]; *Mahoney* v. *Commissioner of Pub. Works of Lowell,* 351 Mass. 697 [1966]). The order for judgment dismissed the petition, and the petitioners have appealed.

The order for judgment was right. We summarize the facts found by the trial judge. The locus is a 4.7 acre parcel of land owned by William G. Lyons (Lyons), the principal officer and shareholder of Brimfield Precision, Inc. (Precision). On the easterly portion of the locus is a one-story masonry structure with a floor area of 3,000 square feet. Precision, the town's only industry and its largest employer, has used this structure for the fabrication of small sophisticated surgical instruments and parts since before the town's adoption on June 19, 1968,[2] of its first zoning by-law. These operations thereupon constituted a nonconforming use in the Agricultural-Residential district in which the locus was placed. They cause no noise, waste, smoke, or pollution of any kind, and Precision's requirements for municipal facilities and services are minimal.

The locus fronts on the southerly side of Mill Lane Road and also has access to Haynes Hill Road. Both Mill Lane Road and Haynes Hill Road are paved secondary ways and intersect Route 19 within a few hundred feet of the locus. Route 19 is one of the major roads of the town and leads to the center of the town, where it intersects U. S. Route 20.

The area in which the locus is situated is sparsely settled; it consists primarily of wooded or meadow land intermittently interrupted by single family homes, some with associated farm buildings. One of the property owners near the locus stores on his property equipment and vehicles used in his septic system installation and service business. There has been no substantial change in the area since the original adoption of the zoning by-law (compare *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 413 [1956]; *Addison-Wesley Publishing Co. Inc.* v. *Reading,* 354 Mass. 181, 186 [1968]).

---

[2] The by-law was approved by the Attorney General on September 12, 1968, and presumably was published and posted and hence became effective shortly thereafter. G. L. c. 40, § 32.

The 1968 by-law established five types of zoning districts: Residential, Agricultural-Residential, Business, Industrial, and Flood Plain. But the zoning map, which was adopted together with the by-law, divided the entire town into only three of those districts: Agricultural-Residential, Business, and Flood Plain. No land in the town was zoned either as Residential or as Industrial. Compare *Noonan* v. *Moulton,* 348 Mass. 633, 638-639 (1965).

In July of 1971, Precision, desiring to expand its manufacturing operations, moved its office facilities into two trailers which were placed in front of the building. A number of neighbors protested to the building inspector. The building inspector refused a permit for expansion of the building, and the board of appeals told Lyons that it did not have the power to grant relief. Thereupon, Lyons requested that an article be included in a warrant for a special town meeting to consider rezoning the locus from Agricultural-Residential to Industrial.

The town meeting was held on December 29, 1971. The planning board unanimously recommended rejection of the amendment. Compare *Noonan* v. *Moulton, supra,* at 639. The board of selectmen, however, favored the amendment and reported to the town meeting that Lyons had told it that Precision would expand its 28-man work force by 10 if permitted to enlarge its plant but that if it were not allowed to expand, it would be forced to seek new quarters in another community. The town meeting voted by more than the required two-thirds majority to adopt the amendment; the Attorney General approved it on January 27, 1972.

The petitioners point to the various factors which have entered, to a greater or lesser degree, into decisions of the Supreme Judicial Court in the "seemingly unending line of cases which have . . . reach[ed that court]" (*Crall* v. *Leominster,* 362 Mass. 95, 100 [1972]) attacking the validity of zoning regulations and their amendments as spot zoning. For each case (generally less recent) which finds spot zoning and in which one of those factors occurs, there may be found a case which upholds the zoning regulation, al-

though the same factor is present. We do not pause to classify and analyze the numerous cases. The overriding "test is whether there has been shown any substantial relation between the amendment and the furtherance of any of the general objects of the enabling act.... The promotion of the public welfare, as that term is fairly broadly construed, is chief among the purposes of the enabling statute." *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228 (1964). See G. L. c. 40A, § 2.

The trial judge in his comprehensive and well-considered "Findings, Rulings, and Order for Judgment" summarized the circumstances as follows: "By December of 1971, however, the situation had changed to some degree [from the situation in 1968, when a nonconforming use was sufficient for Precision's needs]. The town's only industry and largest employer needed to expand, and the by-law prohibited such expansion. The town faced the prospect of losing the company .... The probability of replacing it with an equally desirable business or industry was not great. The changes in the size and appearance of the company's building that were contemplated to permit the required expansion were not drastic and not likely to detract from the appearance of the area in which the building is located."

He then held, "In my opinion, the voters were justified in concluding that the public welfare would be furthered if the company's presence in the town could be preserved." We agree. *Shannon* v. *Building Inspector of Woburn,* 328 Mass. 633, 636-638 (1952). *Raymond* v. *Commissioner of Pub. Works of Lowell,* 333 Mass. 410, 411-414 (1956). See *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 595 (1949); *Pierce* v. *Wellesley,* 336 Mass. 517, 521-522 (1957); *Tracy* v. *Board of Appeals of Marblehead,* 339 Mass. 205, 207-209 (1959); *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228-230 (1964); *Kennedy* v. *Building Inspector of Randolph,* 351 Mass. 550, 553-554 (1967); *Barrett* v. *Building Inspector of Peabody,* 354 Mass. 38, 42 (1968); *Addison-Wesley Publishing Co. Inc.* v. *Reading,* 354 Mass. 181, 186 (1968).

Moreover, "[o]nce it is established that the purpose of

the amendment is to promote the public welfare, the desira-
bility or the necessity of using a particular locus, as com-
pared with other sites, to accomplish the purpose is a
matter to be decided by the local legislative body. *Lamarre*
v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542,
547 [1949]. The size of the area to be set aside for the
purpose is likewise a matter of local judgment." *Lanner* v.
*Board of Appeal of Tewksbury, supra,* at 229.[3] Indeed, as
the trial judge pointed out, the locus was the obvious area
for an industrial zone. "In the first place, of course, it was
the site of the company's existing building and had been
devoted to the company's business as a non-conforming use
[compare *Caires* v. *Building Commr. of Hingham,* 323
Mass. 589, 596-597 (1949); *Raymond* v. *Commissioner of
Pub. Works of Lowell,* 333 Mass. 410, 412-413 (1956)[4]].
In addition, however, it has ready access to Route 19 and
hence to U. S. Rte. 20 [compare *Shannon* v. *Building In-
spector of Woburn,* 328 Mass. 633, 636-637 (1952); *Addison-
Wesley Publishing Co. Inc.* v. *Reading,* 354 Mass. 181, 186
(1968)]; its size and topography are appropriate for indus-
trial use;[5] it is bounded on two sides by undeveloped land,
and it is located in an area which is not wholly devoted

---

[3] The court in that case went on to say: "It is no objection to a
legislative solution of a public problem that it will incidentally lead to
private profit or advantage. *Pierce* v. *Wellesley,* 336 Mass. 517, 522
[1957]. The vote of the townspeople on the specific amendment empha-
sizes a genuine and general public interest in the establishment of the
local business district transcending any concern for Garabedian's pri-
vate advantage. See *Raymond* v. *Commissioner of Pub. Works of
Lowell,* 333 Mass. 410, 412 [1956]." *Lanner* v. *Board of Appeal of
Tewksbury,* 348 Mass. at 229-230.

[4] In any event, it is not controlling that "a particular parcel of prop-
erty was singled out for treatment different from that given to sur-
rounding property of a similar character," for the change was not *"all
for the economic benefit of the owner of that lot." Board of Appeals of
Hanover* v. *Housing Appeals Comm.* 363 Mass. 339, 361-362 (1973),
quoting in part *Whittemore* v. *Building Inspector of Falmouth,* 313
Mass. 248, 249 (1943) (emphasis in *Hanover* case).

[5] Compare *Sinn* v. *Selectmen of Acton,* 357 Mass. 606, 609 (1970),
citing G. L. c. 40A, § 3, which lists among the purposes of a by-law,
"to encourage the most appropriate use of land throughout the city or
town."

to residential use [compare *Durand* v. *Superintendent of Pub. Bldgs. of Fall River*, 354 Mass. 74, 77 (1968)]."

It is clear that the petitioners have not sustained the heavy burden of proof placed upon one attempting to invalidate a zoning by-law as spot zoning. As was emphasized in *Crall* v. *Leominster*, 362 Mass. 95, 103 (1972): "To sustain that burden they must prove facts which compel a conclusion that the question whether the amendment falls within the enabling statute is not even fairly debatable." See also the cases cited in fns. 4 and 5 of the *Crall* case at 101-102 and *Martin* v. *Rockland*, 1 Mass. App. Ct. 167, 169 (1973).

> *Order dismissing petition affirmed.*