Woodland Estates, Inc. *v.* Building Inspector of Methuen.

In *McMurtry* v. *State Bd. of Medical Examrs.*, 180 Cal. App. 2d 760 (1960), a similar statutory scheme employing the language "habitual user" was found to be unconstitutionally vague because the statute provided no criterion by which a physician could determine how many instances of narcotics use must take place before a person becomes an "habitual user." *Id.* at 770. The phrase "chronic use" poses problems in application similar to those posed by the phrase "habitual user." A physician must, of necessity, guess at its meaning and application. See *Weissman* v. *United States*, 373 F. 2d 799, 800-801 (9th Cir. 1967), citing *McMurtry* with approval. We therefore conclude that the statute did not comport with the requirements of due process of law.

The defendant's motions for directed verdicts on the complaints charging him with violations of G. L. c. 94, § 210A, should have been granted, and his exceptions are therefore sustained. Judgments are to be entered for the defendant.[8]

*So ordered.*

---

WOODLAND ESTATES, INC. & others *vs.* BUILDING INSPECTOR OF METHUEN & others.

Essex.    November 15, 1976. — December 31, 1976.

Present: KEVILLE, GOODMAN, & ARMSTRONG, JJ.

*Zoning,* Validity, Spot zoning, Hospital. *Equal Protection of Laws,* Zoning.

Amendments to a town's zoning by-law which created a new "Hospital District" and included in the new district approximately sixty-five acres of land on which a hospital had operated as a nonconforming use for twenty-four years were not invalid as constituting "spot

---

[8] Our disposition of these cases makes it unnecessary for us to consider any of the defendant's other contentions.

zoning" where the town could reasonably have concluded that the reclassification would promote the health, safety and general welfare of the community. [760-761]

Amendments to a town's zoning by-law creating a new "Hospital District" which included approximately sixty-five acres of land on which a general care hospital had operated as a nonconforming use for twenty-four years, but excluding from the district nearby property on which a nursing home was operated, did not constitute a denial of equal protection of the laws. [761-762]

In an action attempting to nullify two zoning amendments adopted by a town, the judge did not err in excluding evidence as to whether the amendment was invalid for failure to seek or to receive the Attorney General's approval pursuant to G. L. c. 40, § 32, where that issue was not raised in the plaintiff's complaint. [762-763]

PETITION for a writ of mandamus filed in the Superior Court on June 27, 1974.

The case was heard by *Hallisey, J.*

*Israel Bernstein* for the plaintiffs.

*Robert T. Harrington & Thomas D. Burns (Peter J. McQuillan* with them) for the defendants.

KEVILLE, J. This action was brought by Woodland Estates, Inc. (Woodland), its president, Matthew A. Chiara (Chiara), and ten other residents of the town of Methuen against the town building inspector, clerk, administrator and council president in an attempt to nullify two zoning ordinances adopted by Methuen in May, 1974. The first amended the zoning by-law[1] by creating a new type of district, entitled "Hospital District,"[2] while the second[3] altered the town zoning map to include in the new district

---

[1] In Methuen the words "ordinances" and "by-laws" appear to have been used interchangeably.

[2] Ordinance No. 1974, #20, provided inter alia: "In a Hospital District, no building or land shall be used for any manufacturing, trade or industrial purposes, or for any other purposes, except one or more of the following: (1) Hospital. (2) Clinic. (3) Diagnostic or treatment facility. (4) Professional office building for physicians, surgeons, dentists and other medical and para-medical and para-dental personnel but excluding the sale of all consumer products in said building. (5) Nursing home, extended care, convalescent or rest home facility, but not a correctional institution or a place of detention. (6) Church, chapel or burying ground for those dedicated to the religious life. (7) Residential structure for student nurses and a convent. (8) Any use accessory to the foregoing."

[3] Ordinance No. 1974, #21.

approximately sixty-five acres of land owned by the inter-
vener Bon Secours Hospital, Inc. (Bon Secours). Wood-
land is a corporation which operates a nursing home on
land adjacent to Bon Secours. Chiara is president and part
owner of Woodland, as well as the owner of 6.3 acres
of land to the northeast of the nursing home property.
The other ten individual plaintiffs are single family home-
owners in the vicinity of the hospital and nursing home.
As the trial judge pointed out on several occasions, the
plaintiffs made strange bedfellows. The homeowners, none
of whom testified at the trial, apparently oppose the es-
tablishment of a nonresidential zone in their neighbor-
hood. On the other hand, Woodland and Chiara (who was
the only individual plaintiff to testify) object to the fact
that when the new hospital district was established their
land was not included in it.

The judge found that prior to the adoption of the ordi-
nances both Bon Secours and Woodland had been operat-
ing as nonconforming uses in an area zoned for residential
use. The hospital had expanded several times since open-
ing in 1950, but on each occasion had been required to
obtain zoning variances, which was time consuming and
frequently involved litigation. Consequently, in Septem-
ber, 1973, the hospital, desirous of further expansion, in-
cluding construction of a doctors' office building, submitted
proposals to the town planning board for the creation
of a new hospital district to encompass the Bon Secours
property.

In November, 1973, the planning board, after a hearing,
recommended passage of the proposals to the planning
committee of the town council. In December, 1973, the
planning board voted to recommend certain changes in
the proposals, including the deletion from the hospital
zone of 4.24 acres, which Bon Secours had agreed to deed
to the town for construction of an access road and swim-
ming pool for the town's new high school nearby.[4] In

---

[4] The plaintiffs alleged in their complaint that passage of the zoning
ordinances was part of an illegal exchange for Bon Secours' agreement

March, 1974, the planning committee of the town council, after holding a meeting and a hearing on the revised proposals, recommended approval to the full town council. The council adopted those proposals on May 6, 1974.

In the meanwhile, Chiara had been seeking unsuccessfully to have Woodland's and his own property included in the new zone. He had a number of communications with Bon Secours' officials in the fall of 1973, receiving assurance that Bon Secours had no plans to build a competing nursing home and some indication of Bon Secours' support for inclusion of Woodland in the proposed hospital district. On January 14, 1974, he informed the planning board of his desire to include the land of Woodland, and perhaps his own, in the zone. The board took the matter under advisement. On February 5, Chiara wrote to the planning committee of the town council proposing inclusion of the two parcels. Apparently the committee opposed enlarging the district because the planning board had already held public hearings and had made recommendations which followed the hospital's proposals.

On February 11, the planning board met to consider Chiara's requests and voted not to recommend further changes to the council planning committee. The board stated, however, its willingness to consider Chiara's proposals separately at a later date; but Woodland and Chiara took no further administrative steps to have the two parcels included in the hospital district. Rather, on June 27, 1974, in conjunction with the individual homeowners, they instituted this suit.

We conclude that the judge was right in rejecting the plaintiffs' claim that the amendment of the zoning by-law creating a hospital district and the placement of only the Bon Secours' property within it were invalid as spot zoning. The question is whether this reclassification violated

to deed the land for the swimming pool. The judge rejected this contention and held that, if there had been a quid pro quo, it was for the town's cooperation in affording Bon Secours access to an adjoining street. The plaintiffs have not effectively argued the issue on appeal, and we perceive no basis for disturbing the judge's conclusion.

the provisions of G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1;[5] that is, whether it bears no rational relation to the furtherance of public health, safety, convenience, morals or welfare. Where, as here, the reasonableness of the by-law is fairly debatable, the judgment of the local legislative body responsible for its enactment is controlling. Upon judicial review every presumption is to be made in favor of the by-law's validity and its enforcement will not be refused without a showing beyond a reasonable doubt that it conflicts with the applicable enabling act or the Constitution. *Crall* v. *Leominster*, 362 Mass. 95, 101-102 (1972), and cases cited. *Raymond* v. *Building Inspector of Brimfield*, 3 Mass. App. Ct. 38, 41-42 (1975).

The judge found that several thousand Methuen residents were treated yearly at Bon Secours. The town, in deciding to change the zoning classification of Bon Secours to facilitate expansion of the hospital and allied services, could reasonably have concluded that the change would promote the health, safety and general welfare of the community.

It is obvious, with respect to the claims of those plaintiffs who are owners of single-family homes in the vicinity of the hospital, that this is not a situation in which one piece of property in a homogeneous area has been singled out for treatment differing from that accorded surrounding land indistinguishable from it in character for no reason other than to benefit the owner. Contrast *Whittemore* v. *Building Inspector of Falmouth*, 313 Mass. 248, 249 (1943); *Smith* v. *Board of Appeals of Salem*, 313 Mass. 622, 624 (1943); *Atherton* v. *Selectmen of Bourne*, 337 Mass. 250, 254-255 (1958); *Schertzer* v. *Somerville*, 345 Mass. 747, 752 (1963). Prior to the change, the hospital had been established on the locus as a nonconforming use for approximately twenty-four years. See *Raymond* v. *Building Inspector of Brimfield*, *supra*, at 41-42. The

---

[5] See now G. L. c. 40A, § 1, as appearing in St. 1975, c. 808, § 3, effective January 1, 1976.

change was not an "irrational treatment of people similarly situated" so as to constitute a denial of equal protection of the law guaranteed by Federal and State Constitutions. See *Board of Appeals of Hanover* v. *Housing Appeals Comm.* 363 Mass. 339, 362, n.15 (1973).

Nor have Woodland and Chiara, apparently the moving forces behind this litigation, been denied equal protection of the law. While Bon Secours and Woodland bear some superficial resemblance to each other, particularly against a neighborhood background of single-family homes, the town council could properly have found rational grounds for including Bon Secours in the new hospital district and excluding Woodland. In addition to differences in topography, Bon Secours had been operating as a multiservice hospital since 1950, providing inpatient care, a psychiatric inpatient and outpatient facility, X-ray and cobalt therapy, a blood center and auxiliary facilities. And it now has a staff of 225 doctors and provides employment for 1,250 people. On the other hand Woodland has been in operation only since 1969, is much smaller and provides no such services. It was neither irrational nor arbitrary for the town to accord different treatment to a general hospital and a nursing home furnishing care at levels 2 and 3.[6] Once it is established that the purpose of a zoning amendment is to promote the public welfare, the local legislative body is given discretion in determining the desirability of using a particular site to promote that purpose and in determining its size. *Raymond* v. *Building Inspector of Brimfield, supra,* at 41-42.

The plaintiffs also argue that the amendment to the zoning by-law is invalid for failure of the town to seek or receive ratification by the Attorney General as required of towns under G. L. c. 40, § 32, as amended through St. 1967, c. 308. Methuen contends that since it actually has

---

[6] For definitions of the different levels of care and the procedures for licensing of long term care facilities at the various levels, see "Rules and Regulations for the Licensing of Longterm Care Facilities," Code of Mass. Regulations, Vol. XIII, Part 9, pp. 1005-1084.

a city rather than town form of government, it was not necessary to seek the approval of the Attorney General because § 32 specifically provides that it does not apply to cities. Whether a municipality is a "town" or a "city" is determined not by its nomenclature, but by the substance of its governmental structure. *Opinion of the Justices,* 365 Mass. 655, 658 (1974). *Del Duca* v. *Town Admr. of Methuen,* 368 Mass. 1, 9, n.6 (1975). But we need not resolve the question of Methuen's status in this respect. Since the plaintiffs failed to raise the issue in their complaint whether the amendment was invalid for failure to seek or to receive the Attorney General's approval, the judge did not err in excluding evidence on that issue as being outside the scope of the pleadings. *Finlay* v. *Eastern Racing Assn. Inc.* 308 Mass. 20, 28 (1941). *Coughlin* v. *Coughlin,* 312 Mass. 452, 454 (1942). *Zarski* v. *Creamer,* 317 Mass. 744, 746-747 (1945). *Burwick* v. *McClure,* 318 Mass. 626, 631 (1945). *Stokes* v. *Old Colony Trust Co.* 354 Mass. 776 (1968). Nor did the plaintiffs seek to amend their complaint. Compare *Schertzer* v. *Somerville,* 345 Mass. 747, 750 (1963).

We discern no abuse of the broad discretion accorded the judge in his denial of the plaintiffs' motion to amend the judgment or for a new trial. See *Sharpe, petitioner,* 322 Mass. 441, 444 (1948); *F.P. Battery Research Corp.* v. *Major Mach. Corp.* 342 Mass. 780 (1961). The evidence which formed the basis for the plaintiffs' motion and the line of questioning addressed to Chiara on cross-examination at trial to which that evidence related, was, at most, only remotely connected with any issue germane to the litigation and considered by the judge.

Assuming error in the allowance of the questions put to Chiara and his responses thereto, their admission did not prejudice the plaintiffs' case so as to require a new trial or modification of the judgment. Mass.R.Civ.P. 61, 365 Mass. 829 (1974). G. L. c. 231, § 132. See *Carey* v. *Zayre of Beverly Inc.* 367 Mass. 125, 135 (1975).

Remaining evidentiary issues raised by the plaintiffs

are without merit and need not be discussed. *Brancaleone v. Parisi,* 3 Mass. App. Ct. 566, 571 (1975).

*Judgment affirmed.*