DETLEV F. VAGTS & others vs. SUPERINTENDENT AND
INSPECTOR OF BUILDINGS OF CAMBRIDGE & another.

Middlesex.    February 4, 1969. — April 17, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Zoning*, Amendment of by-law or ordinance, Spot zoning.

With respect to a locus in a residential zone of a city situated on a main
artery and containing one vacant lot, a church, apartment buildings,
wooden houses, and a multi-family structure, opposite an area located
in a residential zone less restricted as to height of buildings and lot
use, and having the characteristics of such zone, an amendment of the
zoning ordinance of the city, in which there was a general need for
apartment house construction, changing the classification of the locus
to the less restricted residential zone could not be ruled invalid as spot
zoning.

PETITION for a writ of mandamus filed in the Superior
Court on August 10, 1967.

The case was heard by *DeSaulnier, J.*

*Detlev F. Vagts* for the petitioners.

*Philip M. Cronin*, City Solicitor, for the respondents.

REARDON J.   This is a petition for writs of mandamus
ordering the superintendent and inspector of buildings of
Cambridge to enforce the zoning ordinance of that city as it
existed prior to adoption by the city council on or about
June 26, 1967, of an ordinance purporting to amend the
zoning map of the city, and ordering the city clerk to ex-
punge the amending ordinance from the records. Lawrence J.
Harrington, an owner of property within the locus subject
to the amending ordinance, was permitted to  intervene.
Following hearing the judge entered an order for judgment
dismissing the petition.  The petitioners appealed.  There
is a report of the evidence.

We first refer to the findings of the judge.  The city
council of Cambridge on June 26, 1967, adopted ordinance

No. 757, which changed the locus from a "Residence C–2" zone to a "Residence C–3" zone. The locus, with the exception of one vacant parcel of 20,000 feet belonging to the intervener, contained a church, apartment buildings, and wooden houses situated on the westerly side of Massachusetts Avenue in Cambridge, and one wooden multi-family structure numbered 6 Chauncy Street. Differences in the two zones deal in part with the maximum ratio of floor area to lot area, allowable minimum maximum ratio of floor area to lot area, allowable minimum lot spaces per dwelling unit, and height.[1] Prior to 1924 the locus was part of an area zoned for apartment buildings up to 100 feet in height but a 1942 ordinance imposed a height limitation of 65 feet. The city council in February, 1961, adopted a zoning ordinance and map designating the locus a part of a "Residence C–2" district. Subsequently the owner of a parcel containing three frame houses in the locus was granted a variance (still in force and effect) allowing him to construct thereon an apartment building nine stories in height. The locus fronts on Massachusetts Avenue, which at that point is from 100 to 200 feet in width, and the area directly across the avenue from the locus is zoned "Residence C–3." There is a need "in the immediate locus area for a greater density use," and the change to "Residence C–3" on the westerly side of Massachusetts Avenue is a "logical extension" of the "Residence C–3" zone on its easterly side. The locus already contains a church and "two existing apartment buildings which are C–3 uses" in addition to the parcel for which a variance has been granted. "[R]ezoning was important to alleviate the pressing housing needs in the area." "The petitioners reside in an A–2 section of Follen

---

[1] The petitioners have correctly described these differences in their brief, pointing out that in art. V, § 2, of the zoning ordinance in "Residence C–3" districts "(1) the maximum ratio of floor area to lot area increases from 1.75 to 3.0; (2) the minimum lot space per dwelling unit diminishes from 600 square feet to 300; (3) the minimum set-back at the sides is reduced from $\frac{1}{5}$ of the sum of height plus the length of the wall of the building parallel to the sides to $\frac{1}{6}$; (4) the minimum set-back at the rear is reduced from $\frac{1}{4}$ of the sum of the height plus the length of the rear wall to $\frac{1}{5}$; (5) the requirement of 'usable open space' is reduced from 15% to 10% of the lot area; and (6) the maximum height limit of 85 feet in effect in a C–2 zone is abolished."

Street which is composed mostly of single family frame houses and the whole area of Follen Street is surrounded by apartment buildings and buildings of a high density residential use." This has been so for "a long period of time." The construction of an apartment building on the vacant lot will not adversely affect the petitioners' property. The action of the city council in view of the need for additional housing in the rezoned area was not arbitrary or unreasonable and was a proper exercise of the council's police powers. Finally, the judge found the locus from its present use and the granted variance to be sufficiently differentiated from other properties on that side of Massachusetts Avenue in a "Residence C-2" district to support the reclassification which is under attack.

The petitioners have argued strongly to us that the amending ordinance constituted spot zoning, that the ordinance has no substantial relation to the purposes of zoning, and that no change in or about the locus justified the amendment. They have also referred to the adverse recommendation of the planning board on the petition of the intervener to the city council which brought forth the amending ordinance. It is apparent from the record and the evidence in this case that the petitioners, residents of a comparatively quiet street of single family houses, which in the main have been improved rather than otherwise in recent years, have concern over the pressures in a city of comparatively small geographical area which impel the city council to that form of relief which lies in the construction of high rise buildings. These circumstances cannot blind us to the principles which govern these matters and to the proper application of them.

These principles have been repeatedly stated. Whether ordinance No. 757 was valid lies in the determination of whether it complied with the enabling statute. *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 594. "Every presumption is to be made in favor of the amendment and its validity will be upheld unless it is shown beyond reasonable doubt that it conflicts with the enabling act." *Lanner* v. *Board of Appeal of Tewksbury*, 348 Mass. 220, 228. If it

appears that the reasonableness of an ordinance is fairly debatable (and evidence from three expert planners indicated that it is), much weight must be given to the decision of the city council and we do not substitute our judgment for that of the council. *Cohen* v. *Lynn,* 333 Mass. 699, 705, and cases cited. *Rousseau* v. *Building Inspector of Framingham,* 349 Mass. 31, 35.

The area of the locus is approximately 92,188 square feet. It is situated on a main artery in a city in which there is a substantial demand for housing, the demand for single family houses being low because of high land cost which erects an economic barrier against that type of development. There evidently exists a general need for apartment house construction. The locus rezoned has already taken on the characteristics of a "Residence C–3" area with existing uses and an outstanding variance for a "Residence C–3" use. It certainly more closely resembles those uses in the "Residence C–3" area across Massachusetts Avenue than it does the "Residence C–2" attributes of the area immediately to its west. That the planning board recommended a denial of the intervener's petition for a zoning change before the city council (with which the city planning director did not agree) is not persuasive. This report was advisory only in nature and not binding upon the council. *Noonan* v. *Moulton,* 348 Mass. 633, 639. The evidence does not convince us that the property of the petitioners on Follen Street will be adversely affected by the zoning change. Even if this were so the ordinance on that fact alone would not be rendered invalid. *Lanner* v. *Board of Appeal of Tewksbury,* 348 Mass. 220, 228.

In short, having considered the findings, the evidence, and the action of the council viewed in the light of the enabling act, we are of opinion that the judge did not err.

*Order for judgment affirmed.*