Fremont-Smith, J.
This action, which arises out of a contract dispute relating to zoning, was tried jury-waived in March 1996. The amended complaint contained a number of counts, all of which except those for breach of contract and for a declaratory judgment, were waived in the course of the trial. Based on all of the credible evidence, the Court makes the following findings, rulings and order for judgment.
Slotnick is the owner of a parcel of land on Prospect Street, Peabody, Massachusetts, near Route 114 and the Peabody Shopping Center, comprising approximately eleven acres. Prior to April 12, 1988, under the Revised Zoning Ordinance of the City of Peabody (“Ordinance”), a portion (approximately three acres) of the Land was zoned as R-3 (Multiple Family Residence) and another portion (approximately eight acres of the Land) was zoned as B-R (Regionalbusiness). Slotnick, as the owner of the Land, and the City of Peabody, entered into an Agreement on April 12, 1988, relating to the Land, whereby the Peabody City council voted to approve a zone change to R-4 multiple-family residence which had been requested by Slotnick, in consideration of Slotnick’s agreement “that the parcel of land hereto described shall be the site of a maximum of 154 dwelling units.”[1] The zone change was then enacted. Due to housing market conditions, however, the multifamily housing development was never built, and Slotnick now desires to develop the land for commercial use, which the City contends would violate the 1988 agreement.
Although Slotnick’s attorney, in public statements to neighbors in 1988, indicated that Slotnick did not then contemplate developing the parcel for commercial purposes, neither Peabody nor Slotnick, upon entering into the 1988 agreement, discussed or considered any limitation on future commercial development of the property (which was also permitted in an R-4 zone). The negotiations between the parties to the agreement and the contract itself expressly dealt only with restrictions on the then contemplated residential multifamily use. Thus, no restrictions on commercial or other non-residential use of the Land was recommended in the Planning Board vote of March 3, 1988. To the contrary, it was directed only to limiting the number of dwelling units in the “potential development” to 154, limiting the height of the buildings to 4 stories, and other similar restrictions.
Indeed, DiZoglio, who was then the Director of Community Development, when asked by the Ciiy Council to submit a memorandum as the history of the 1988 zoning change to R-4, had stated:
“This agreement was generated to control the amount of housing units which could be built on the site since the requested zone allowed for more units than what the Council desires. It also included mitigation conditions such as a height limit, traffic improvements and landscaping. The proposed housing development has not been developed due to the current economic climate.”
His trial testimony was to the same effect.
Accordingly, the Court finds that there was never any “meeting of the minds” with respect to any possible future commercial use of the Land reflected in the 1988 agreement between Slotnick and Peabody, and that said agreement was not intended to, and did not, restrict Slotnick’s rights to possible future commercial development of his land, in accordance with the then R-4 zoning. In sum, the agreement did not restrict Slotnick from the benefit of all non-residential uses permitted under the then R-4 zoning, as well as the multiple family residential use then permitted, but did restrict him to a maximum of 154 multifamily units, although the R-4 zoning, without any restriction, would have permitted up to 319 residential units.
On October 20, 1994 the Peabody City Council voted to rezone the Land, along with about 19 other parcels, from Residential R-4 to R-1B (single family residence). Plaintiff, now wishing to develop the land for commercial use, contends that the 1988 agreement invalidates the 1994 rezoning of the Land, and that the rezoning is, in any event, improper and illegal.
*180 Although plaintiff contended at trial that the City of Peabody failed to show any substantial relationship between the 1994 zoning amendment and the furtherance of any of the general objectives of the Enabling Act when it rezoned the Slotnick Land to R-1B, see Lanner v. Board of Appeals of Tewksbury, 348 Mass. 220, 228 (1964), Peabody’s own Director of Development at the time, DiZoglio, whose testimony the Court credits, testified that the Town did have legitimate planning policy considerations and objectives in mind. The same witness’ testimony, moreover, as well as other evidence, conclusively demonstrated that the zoning change was not “spot zoning,” or otherwise unreasonable, arbitrary or unrelated to proper zoning concerns.
Nor can the 1988 agreement, whereby the City rezoned the property to R-4 in consideration of Slotnick’s agreement to limit residential development to 154 units, be reasonably construed as an agreement by the City to retain the same R-4 zoning in perpetuity, or to have been intended to prohibit the City from ever amending the zoning boundary as changed circumstances might require. At most, the 1988 agreement might reasonably be construed to implicitly obligate the City to have retained the R-4 zoning for a reasonable time, i.e. for a period of perhaps several years, to provide plaintiff with a reasonable opportunity to develop the land as then contemplated. Accordingly, the Court finds that the 1994 zoning amendment does not constitute a breach by Peabody of the 1988 agreement, and was not otherwise improper or illegal.
This is not to say, however, that Slotnick may not be “grandfathered” for certain commercial uses with respect to the recent zoning amendment. The evidence indicated that a subdivision plan for commercial use of the Land was filed by Slotnick before the zoning amendment, which may have complied with the “grandfathering” provisions of c. 40A, §6, fifth paragraph. As the evidence whether the conditions of that statute were complied with was not fully developed at trial, however, the Court is unable to reach any definitive conclusion in that regard.
ORDER
Accordingly, judgment shall enter for the defendant on the breach of contract claim. With regard to declaratory relief, the Court finds and declares that Slotnick Trustee is entitled to use the Slotnick Land for the uses allowed under R-1B zoning and, to the extent that Slotnick may be grandfathered pursuant to c. 40A, §6, he is entitled to the commercial uses previously permitted under R-4 zoning, without being restricted in regard to commercial use by the 1988 agreement.

If no restriction had been agreed to regarding the number of multiple family units, up to 319 units would have been permitted on the Slotnick Land under the R-4 zoning.