MARCIEN JENCKES *vs.* BUILDING COMMISSIONER OF
BROOKLINE & another.[1]

Norfolk. May 3, 1960. — June 7, 1960.

Present: SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Zoning. Constitutional Law,* Zoning, Police power.

An amendment of a town's zoning by-law, in effect prohibiting the erec-
tion in a single residence district of a building upon a lot with frontage
only on a private way "opened or dedicated to public use prior to the
adoption of the by-law as amended" unless such way was "not less than
40 feet in width," was confiscatory and invalid as applied to prevent
building a residence on a vacant lot which conformed to the by-law
except that it had frontage only on a long private way approximately
thirty feet wide, "open to public use for over fifty years," and furnish-
ing access also to a number of other lots already built upon, and which
had been created, after the amendment, by division of a parcel hav-
ing frontage on both such private way and a street.

BILL IN EQUITY, filed in the Superior Court on January 4,
1960.

The suit was heard by *Smith, J.*

*Marcien Jenckes, (Geoffrey Bolton & Thomas Otis* with
him,) for the plaintiff.

*Daniel G. Rollins,* Town Counsel, for the defendants.

*Alfred Gardner & William C. Sawyer,* by leave of court,
submitted a brief as amici curiae.

CUTTER, J. The plaintiff who holds a written contract to
purchase a vacant lot (lot 11, block 326, on the assessors'
plans) on Fairmount Street, Brookline, seeks declarations
(a) that he is not prevented by certain provisions of the
zoning by-law of Brookline from building on that lot a resi-
dence otherwise complying with the by-law, and (b) that he
is entitled to a building permit. There appears to be no
dispute about the facts, many of which are to be derived

---

[1] The town of Brookline. Notice (see G. L. c. 231A, § 8) was given to the
Attorney General who has not filed an appearance.

principally from three plans referred to informally in the pleadings and in the trial judge's findings. Although counsel should have made sure that the record contained more specific indication that these plans were to be part of the record (see *Clarke* v. *Board of Appeals of Nahant,* 338 Mass. 473, 475; cf. *Dodge* v. *Inspector of Bldgs. of Newburyport,* 340 Mass. 382, 386), we consider them, as the parties have done in their briefs and at the arguments, as intended to be incorporated by reference in the pleadings and findings. The trial judge indicated that the sole question presented was whether the town, by its zoning by-law, may "prohibit the construction of a residence otherwise completely in accordance with the zoning and building laws merely because the lot is located on a private way less than forty feet wide open and dedicated to the use of the public before the enactment of the zoning enabling act."

The trial judge found, among other things: "Fairmount Street, although still unaccepted by the town, has been open to public use for over fifty years. It is approximately 1,400 feet long and approximately thirty feet wide. . . . [L]ot 11, upon which the residence is proposed to be constructed, conforms to the by-laws as to area and frontage requirements, so far as width and depth and area are concerned and the denial of the permit by the building commissioner is posited upon the claim that Fairmount Street is not forty feet in width. Fairmount Street is in the district classified . . . [art. III, § 7, of the by-law] as a single residence district [art. IV, § 7 (e)] . . . [T]he proposed construction . . . complied with all provisions of the . . . [by-law] excepting that it does not abut on a forty foot private way, as required by . . . [art. II] defining a private way." The town has adopted the subdivision control law. The planning board dealt with a plan, recorded in the registry of deeds on December 26, 1957, showing a division of a large lot (containing, before its division, 53,706 square feet) running from Fairmount Street to Dudley Street, which lies just south of the old Brookline Reservoir. Lot 11, the locus, after the division contained 23,010 square feet,

and had a depth of over one hundred ninety feet and a frontage on Fairmount Street of over one hundred eighteen feet. The plan was indorsed in behalf of the planning board, "Planning Board approval not required under the subdivision control law. No building may be erected upon lot 1, as it would constitute a violation of the zoning by-law"[2] (art. IV, § 11 [e]). Fairmount Street was not "a way meeting the requirements of" art. IV, § 11 (e), which, so the parties agreed, was not included in the by-law until 1943 when an amendment substantially in the form of § 11 (e) was first added.

The trial judge ruled that art. IV, § 11 (e), "is . . . valid . . . that it is not in conflict with . . . the enabling act [G. L. c. 40A] . . . that the refusal of a permit by the building commissioner was within his jurisdiction . . . that in the absence of a special permit or other authority, the . . . [plaintiff] is not entitled to construct a residence on lot 11 . . . [and] that the . . . commissioner is not required to issue a building permit." A final decree, conforming to these rulings, was entered. The plaintiff has appealed.

Examination of the plans in the record shows that Fairmount Street is the only method of access to at least twelve lots. Three lots on Fairmount Street abut also on Dudley Street. The locus (except for part of a large parcel on the opposite side of Fairmount Street near its easterly end) is the only lot upon which there is no building. Some buildings are close to Fairmount Street and would be likely to be damaged by any widening of the street. No necessity or demand for any such widening appears in the record. It

---

[2] It was stipulated that the second sentence in the planning board indorsement on the 1957 plan "was a notice in the nature of a caveat to persons examining the title" and "was not a condition imposed . . . by the planning board in connection with its statutory indorsement . . . in the first sentence." The parties by stipulation also agreed that "Fairmount Street is paved its entire length; a maximum width of 20.7 feet at the easterly end; a width between 19 and 20 feet throughout except for a short distance near . . . [one driveway west of the locus] where the paved surface is 15.7 feet . . . . There are many 40-foot accepted . . . streets in Brookline where the paved surface is 24 feet wide," the remainder being sidewalks, "although present requirements for a 40-foot street are a 30-foot paved surface with two 5-foot wide sidewalks."

Jenckes *v.* Building Commissioner of Brookline.

seems unlikely that such widening could be accomplished without use by the town of the power of eminent domain at some expense to the taxpayers. The effect of the 1943 by-law amendment, now § 11 (e),[3] is to make this lot of 23,010 square feet usable for no purpose except a playground, a park, or ornamental grounds or, perhaps, for uses accessory to the use of the lot (30,696 square feet) on Dudley Street from which the locus has just been, or is about to be, separated. Even ordinary agricultural use does not seem to be permitted. The effect of the amendment, as applied to the locus, is to deprive it of all practical value to its owner or anyone acquiring it. The owner can merely look at it and pay taxes on it.

The town contends that the 1943 amendment, at least in its general application, was "deemed to be necessary both to prevent an undesirable type of development in the town and as a safety measure." It is also stated that there "has been a tendency . . . to construct houses upon property to which there is no adequate means of access by fire apparatus."

We need not determine whether these considerations are sufficient to support the adoption, pursuant to G. L. c. 40A, of zoning provisions like those found in § 11 (e) because of the benefits to be derived from their general application to areas of vacant land, wholly or largely undeveloped. Whatever may be the propriety of the adoption of § 11 (e) for general application, no grounds have been shown which justify the application of § 11 (e) to an isolated undeveloped lot in an older, high value area of large lots already containing single residences, in a way to deprive that lot of all usefulness. There is no indication whatsoever that the

---

[3] Section 11 (e) reads: "Except in use districts 1 and 2 [not applicable to the locus], no building shall be erected upon a lot not abutting for a distance of at least 40 feet upon a public or private way or a way approved by the planning board, unless such a lot abuts upon, and has appurtenant to it the right to use, a way or place not less than 40 feet wide leading to a public or private way." By art. II of the by-law "private way" is defined as a "way not less than 50 feet in width which is open or dedicated to public use but has not become a public way; provided however that the term shall include such a way not less than 40 feet in width which has been opened or dedicated to public use prior to the adoption of the by-law as amended."

proposed building would create or increase significantly any hazard to the public welfare or safety which does not already exist with respect to the numerous residences already built on lots abutting on this long used, existing, private way, less than forty feet wide. The injury to the owner of this isolated lot is so harsh and substantial in comparison with the trivial public benefit, if any, from application of the amendment to the lot, as to make that application confiscatory and an invalid taking of the owner's property, not justified by the police power.

Every presumption is to be made in favor of the validity of a zoning by-law and great weight is to be given to a town's determination that necessity exists for its adoption or amendment. See *Cohen* v. *Lynn,* 333 Mass. 699, 705; *Pierce* v. *Wellesley,* 336 Mass. 517, 521–522. Nevertheless, a zoning by-law cannot properly be applied to a specific parcel of land, where, by reason of "attending peculiar circumstances . . . the imposition of the . . . regulation . . . has no real or substantial relation to the public safety, public health or public welfare." See *Barney & Carey Co.* v. *Milton,* 324 Mass. 440, 444–450, and *Gem Properties, Inc.* v. *Board of Appeals of Milton, ante,* p. 99, at pp. 104–106, and cases there cited, which govern the present case.

In the view we take of the case there is no occasion to discuss other issues argued in the briefs or mentioned at the arguments.

The final decree is reversed. A new final decree is to be entered declaring that the plaintiff is not by reason of the provisions of art. IV, § 11 (e), of the zoning by-law of Brookline prevented from building a residence on lot 11, block 326, shown on the assessors' plans; that § 11 (e) cannot validly be applied to lot 11; and that nothing in § 11 (e) prevents the building commissioner from issuing a building permit for construction on that lot.

*So ordered.*