JULIUS BEAL & others *vs.* BUILDING COMMISSIONER OF SPRINGFIELD & others.

Hampden.    December 7, 1967. — February 7, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Zoning*, Validity, Reclassification, Spot zoning.

An amendment of the zoning ordinance of a city changing the classification of a small parcel of land from residential to business was not supported by a zoning purpose and was invalid as spot zoning where it appeared that the amendment was not enacted as part of any general reëvaluation or realignment of the city's zoning plan, that the parcel was located in an area primarily residential, that business in a limited business zoning district abutting the parcel had not grown appreciably in over forty years, and that the sole beneficiary of the amendment would be one who owned the parcel and adjoining premises in the business district on which a market was located and who planned to use the parcel to expand the business and parking facilities of the market.

PETITION for a writ of mandamus filed in the Superior Court on March 4, 1964.

The case was heard by *Lappin*, J.

*James B. Krumsiek* for the respondents.

*Gordon H. Wentworth* for the petitioners.

SPIEGEL, J.   This is an appeal from an order of the Superior Court that judgment be entered for the issuance of a writ of mandamus "ordering the building inspector[1] [of the city of Springfield] to enforce the zoning . . . [ordinance] as it existed with respect to the locus, prior to the amendment

[1] One Harold Chernock, in behalf of the owner of the locus in dispute, intervened as a party respondent.

of February 17, 1964 [which reclassified the locus from Residence B to Business A] and ordering the city clerk to record the court's action on the appropriate records and zoning maps of the city." The petitioners are owners of nearby property.

The evidence is reported. The trial judge viewed the premises and made the following findings: "In 1922 the City of Springfield adopted a zoning . . . [ordinance] under which the subject lots 22, 30 and 36 Beechwood Avenue were classified as Residence B, which classification prohibits the use of the land for business, industry, manufacture or commercial purposes. . . . [T]he premises . . . [are] located about equidistant from Sumner Avenue and Spruceland Road, and situated on the . . . [westerly] side of Beechwood Road. On lots 30 and 36 there were single family dwellings, unoccupied and in a state of disrepair. The locus is bounded northerly and westerly by other land of the intervening respondent which land was zoned for Business A at the time of the original zoning in 1922, and is presently zoned for Business A. It is occupied by the Crown Kosher Market engaged in the retail sale of meats and groceries, a large barn which appeared to be used for storage only, a row of three small retail stores facing on Sumner Avenue and several wooden frame garages on Beechwood Avenue, apparently unoccupied and in a state of disrepair and neglect. On the south the locus is bounded by a Residence A district on Spruceland Avenue and on the . . . [east] is bounded by Beechwood Avenue. The area directly across the street on Beechwood Avenue is zoned Residence B and Residence A, although the corner lot at Beechwood and Sumner Avenue[s] is occupied by a residential apartment building as the result of a variance granted some years prior. The Sumner Avenue School is located in the aforementioned Business A zone facing Sumner Avenue and about two hundred fifty to three hundred feet westerly of the junction of Sumner Avenue and Beechwood Avenue. . . . [It is planned] to use the lots in question for the expan-

sion of . . . [the] existing business [of] the Crown Kosher Market and expanded parking facilities to accommodate its customers. The plans call for the razing of the old houses, garages and stores and additional entrances and exits on Sumner and Beechwood Avenues to be installed. The general area of the neighborhood is known as the Forrest Park Section of Springfield. Travelling easterly on Sumner Avenue, a distance of about a mile and a half and at the junction of Belmont and Sumner Avenues, there is a large area zoned and used as a shopping area and directly across Sumner Avenue there is a church, auto showroom and funeral parlor — all located in a Business A zoning district. . . . [T]he three lots in question totaling about 18,212 square feet of land, are in a predominantly residential area; . . . the planning board disapproved the change as not being consistent with good planning practices and . . . the only benefit that can come about as a result of the amendment will be a possible financial benefit to the owner of the existing market through expansion and use of the lots which are the subject of the amendment. The public convenience is now adequately served by the aforementioned existing shopping areas."

The respondents contend that the reclassifying of the locus in issue was a "valid exercise of the authority which had been delegated to . . . [the city council] under existing state and local legislation" and that the judge was in error in holding otherwise. We do not agree. The principles which govern the validity of zoning changes have been stated many times by this court. "Every presumption is to be made in favor of the amendment and its validity will be upheld unless it is shown beyond reasonable doubt that it conflicts with the enabling act. . . . If a regulation is within the scope of the enabling statute it is good even though it may adversely affect the value of some other properties in the vicinity of a newly created zone. . . . On the other hand, the amending power may not be invoked solely to confer an economic benefit upon the owner of a comparatively small area within an essentially residential district.

. . . The test is whether there has been shown any sub-
stantial relation between the amendment and the furtherance
of any of the general objects of the enabling act." *Lanner* v.
*Board of Appeal of Tewksbury,* 348 Mass. 220, 228. These
general objects are "promoting the health, safety, conven-
ience, morals or welfare of [the] . . . inhabitants . . . ."
G. L. c. 40A, § 2, as amended through St. 1959, c. 607, § 1.
More specific purposes are set forth in G. L. c. 40A, § 3.
Of these, the purposes urged as a justification for the amend-
ment in question appear to be to lessen congestion in the
streets and to encourage the most appropriate use of land.

The respondents argue that in the forty-odd years since
the zoning ordinance was first passed, the character of the
neighborhood has changed substantially due to the building
of multiple dwellings in the area; that this gives rise to a
need for expanded commercial facilities; that the use which
is to be made of the locus is to rehouse the present shopping
center and provide it with ample off street parking, thus
providing a "community shopping center" and lessening
traffic congestion and pedestrian hazards at the present site
on Sumner Avenue; and that the extension of the business
district into the surrounding residential area is not "spot
zoning" because the locus is contiguous to and not different
in character from the existing business district, and because
the purposes to be accomplished are not limited to the
economic gain of the owner.

The respondents list a number of factors, drawn from the
case of *Bouchard* v. *Ramos,* 346 Mass. 423, 425, n. 1, as
those which justify the expansion of a business district at
the expense of a residential area. They are "the absence
of a demand for residential development in the area in
recent years, the presence of nonconforming uses and mer-
cantile establishments, the proximity of the business zone
and industrial zone, the relatively great age of the abutting
residential properties, the absence of any benefit to the
neighborhood from the vacant locus, the beneficial effect
of proposed change on the appearance of the locus and the
trend in the district away from residential development

into a gradually developing mercantile area." Even if we were to rely primarily upon these factors in the case at bar the trend in the district is not away from residential uses in the direction of mercantile uses. The city planning director testified that the intensive maintenance and private renewal of the homes in the area made it unique in its fidelity to its residential character. The "absence of a demand for residential development in the area in recent years" reflects only that the neighborhood was built up long ago. The persistent efforts of the residents to maintain the neighborhood is ample reflection of "a demand for residential development." That over a long period of time a few apartment buildings have been built seems only an added indication of the desirability of the neighborhood for residential purposes. The respondents stress the advantages to the neighborhood in having the existing structures (garages and old store buildings) torn down and replaced with a new mercantile complex. These structures, however, lie on the business zoned property and there is no obstacle to tearing them down without the zoning change.

In *Whittemore* v. *Falmouth*, 313 Mass. 248, 249, we said that "It is not permissible 'to single out one lot located within what is essentially a residential district and impose restrictions upon this lot that are less onerous than those imposed upon the remaining portions of what is really the same zoning district.'" The singling out of a small parcel abutting on two zoning districts may be equally impermissible. The locus appears to be a primarily residential area; the limited business area in the vicinity has not grown appreciably in over forty years; the proposed amendment is not a part of any general reëvaluation or realignment of the zoning plan of the city. It appears that the sole beneficiary of the amendment will be the owner of the locus and the adjacent business property. Unlike *Peters* v. *Westfield, ante,* 635 in the instant case we can find no basis for a determination that the zoning change is supported by a zoning purpose.

*Order affirmed.*