Robert F. FOGELMAN, Plaintiff
vs.
TOWN OF CHATHAM, Defendant

No. 99394

Land Court Department
of the Trial Court
Commonwealth of Massachusetts

Robert F. FOGELMAN, Plaintiff
vs.
John V. LINEBAUGH, Chairman
William REYNOLDS
Charles SHEPHERD,
William RYDER
and William A. THOMPSON
As they are the Members of the
ZONING BOARD OF APPEALS
of the TOWN OF CHATHAM,
Defendants

No. 40179

Superior Court
Commonwealth of Massachusetts

September 11, 1981

**William F. Riley**, counsel for plaintiff
**Town of Chatham,** counsel for defendant

## DECISION

The complaint in Land Court Miscellaneous Case No. 99394 alleges that the plaintiff is the owner of a freehold estate in possession in land located within the Town of Chatham in the County of Barnstable, shown as Lot A1 on a plan entitled "Division of Land in Chatham, Massachusetts made for Robert Fogelman" dated September 19, 1978 by Nickerson and Berger, Inc. (Exhibit C to the Statement of Agreed Facts), that said Lot A1 is located within an R-20 zoning district established by the Chatham Protective by-law, that the plaintiff proposes to build a guest house on Lot A1 which is permitted by the Zoning By-law so far as use and minimum area requirements are concerned, that the building inspector has refused to grant a building permit for the guest house on the ground that the proposed location is a violation of that provision of Appendix II of the Zoning By-law relating to a setback distance of 25 feet from fresh and salt water and wetlands, that no standards are set forth in the By-law, for determining wetlands, and that wetlands, as regulated by said By-law are only those situated within a Conservancy District. The prayer of the complaint seeks to have this Court determine that the wetland setbacks as contained in Appendix II apply only to wetlands shown on the Protective By-law Map as Conservancy Districts or alternatively that said setbacks are invalid and are so vague and indefinite as applied to land of the plaintiff that they are violative of the Constitution of the Commonwealth of Massachusetts and the United States of America. The defendant, Town of Chatham, filed a motion to dismiss which was denied by the Court. No answer was filed on its behalf, and in lieu thereof the parties entered into a statement of agreed facts. The second case, involving the same property and the same dispute, is a Superior Court matter. Upon motion by the plaintiff, assented to by the defendant Members of the Zoning Board of Appeals of the Town of Chatham, the Superior Court transferred its Case No. 40179 to the Land Court to be heard with the above-numbered Land Court case by a Land Court judge, sitting as a Superior

Court judge.

The complaint in the Superior Court case alleges that the plaintiff had applied for a building permit for the proposed guest house which was denied by the Building Inspector on the ground that it violated the minimum building setbacks from fresh and salt water and wetlands as set forth in Appendix II, that the plaintiff then sought a variance to build said guest house in the proposed location described above in reference to the Land Court case, that the Board upheld the decision of the Building Inspector in refusing to grant the building permit, and that the Board's decision did not comply with either the requirements of G.L. c. 40A or of the Zoning By-law of the Town of Chatham and was arbitrary and capricious. In the Superior Court action the plaintiff seeks to have the decision of the Board reviewed by the Court and annulled. The answer of the Board of Appeals claims that its denial of a permit for the placement of the guest house in the location sought by the plaintiff arises from an alleged violation of Appendix II of the Zoning By-law and denies that said By-law is vague and indefinite and that the Board acted without its powers and in violation of the state and federal Constitution. The parties submitted the cases to the Court on a Statement of Agreed Facts, on arguments of counsel, both oral and written, and a view taken by the Court in the presence of counsel on May 8, 1981. The Statement of Agreed Facts consists of the following numbered twenty paragraphs and is as follows:

1. Robert F. Fogelman signed a Purchase and Sale Agreement with Esther L. Hopkins to buy a certain parcel of land on Orleans Road in North Chatham, Massachusetts, on August 25, 1978, and a copy of that Purchase and Sale Agrement is attached hereto and incorporated herein by reference as Exhibit A;[1] in accordance with the terms of that agreement, the transaction was consummated on October 30, 1978, and a copy of the deed is attached hereto and incorporated herein by reference as Exhibit B. A subdivision plan of the land was filed and the lines of the subdivision are shown on the plan attached hereto and incorporated by reference as Exhibit C. This plan subdivided the land described in Exhibit B into two (2) lots, A1 and A2 (Lot A1 contains land which is the subject of these law suits and hereinafter will be referred to as locus.)

2. The locus, Lot A1, is located in an R-20 zoning district as established by the Chatham Protective By-law and as shown on the Chatham Protective By-law Map (the Chatham Protective By-law is attached hereto in its entirety and that portion of the Chatham Protective By-Law Map which contains the locus and surrounding areas is reproduced and attached hereto and incorporated herein by reference as Exhibits D-1 and D-2, respectively). Appendix II of the said By-law provides that lots in an R-20 district shall have a minimum lot size of 20,000 square feet; the locus contains 66,000 square feet.

3. Section 5.4, Paragraphs 1-4 of the Chatham Protective By-law (hereinafter referred to as the By-law) provides that under certain circumstances a guest house may be located upon the lot in addition to the principal dwelling (locus already contained an existing dwelling), provided that the lot upon which it is to be constructed has a gross area in

---

[1] The attachments to the Statement of Agreed Facts are not attached to this decision, but they have been treated by the Court as exhibits in both the Land Court and Superior Court cases.

excess of that required for the district in which it is located of at least 100% percent; the area required to locate such a guest house on a lot in an R-20 district would be 40,000 square feet.

4. The plaintiff or his agents filed an application for a Septic Permit to the Board of Health of the Town of Chatham (copy attached hereto and incorporated herein by reference as Exhibit E), an Application for a Building Permit to the Building Inspector's Office of the Town of Chatham (a copy attached hereto and incorporated herein by reference as Exhibit F), and a Notice of Intent to the Chatham Conservation Commission in accordance with the provisions of G.L. c. 131, sec. 40 (a copy of which is attached hereto and incorporated herein by reference as Exhibit G). At the time that the application for the Building Permit was made, a site plan was submitted showing the proposed location of the building to be constructed and the setback line from the salt water wetland located at the edge of Ryder's Cove (Exhibit C shows the said setback line although the proposed location of the building is different and the difference is not relevant to this case).

5. Prior to the first hearing of the Chatham Conservation Commission on February 7, 1979, neither Mr. Fogelman nor his agents had been informed that his proposed building site was within the bounds of an inland wetland by any official of the Town of Chatham. At that first hearing of the Conservation Commission of the Town of Chatham regarding the Notice of Intent filed by Mr. Fogelman, the Plaintiff was represented by Albion G. Hart, Surveyor, of Nickerson & Berger, Inc.; Mr. Hart was informed that the primary concern of the Conservation Commission was the potential tidal inundation of that part of the locus upon which the proposed guest house was to be located during "high course tides". Although some members of the Conservation Commission had visited the locus prior to that hearing, no mention was made of inland wetlands. Mr. Hart was notified at that hearing that the members of the Commission would be visiting the locus during and shortly after the "high course tides" which were to occur in the near future.

6. On December 5, 1978 two test holes were dug to determine the type of soil in the locus and its suitability for on-site septic systems; a copy of the plan showing the location of the holes and the soil logs for each such hole is attached hereto and incorporated by reference herein as Exhibit I.

7. The members of the Conservation Commission made a second visit to the locus to view the effect of the "high course tides" after the date of the test hole digging, and the members of the Commission noted that there was standing water in the tracks left by the backhoe in the vicinity of test hole number 1.

8. Prior to this time the Building Inspector had indicated that he would issue a Building Permit as soon as the Conservation Commission issued its Order of Conditions.

9. The Conservation Commission met on the locus with Mr. Donald G. Schall on March 5, 1979 to check the locus to determine the edge of the wetland. Copies of the minutes of that meeting are attached hereto and incorporated herein by reference as Exhibit J. On the afternoon of March 5, several members of the Conservation Commission visited the locus with Brian Donahue, an engineer for the Department of Environmental Quality Engineering, and the minutes of that meeting are contained in the second half of the last Exhibit J.

10. On March 3, 1979, Harold Hemond, an environmental engineer in

the employ of the plaintiff, visited the locus and rendered a report of his opinion and that report was submitted to the Chatham Conservation Commission at the second hearing held on Mr. Fogelman's Notice of Intent on March 7, 1979. At the request of agents of Mr. Fogelman, Mr. Hemond determined the edge of the wetland in his opinion.

11. Mr. Schall, Mr. Donahue and Mr. Hemond are qualified by education and work experience in relevant fields to render an opinion on wetland vegetation. After examining the vegetation on the locus each determined that the edge of the wetland was in a different location. Those locations are marked on Exhibit C by colored lines. The red line indicated the edge of the wetland in Mr. Schall's opinion, the black line indicates the edge of the wetland in Mr. Donahue's opinion and the green line is the location of the edge of the wetland in Mr. Hemond's opinion.

12. On February 9, 1979, a septic permit had been issued by the Board of Health of the Town of Chatham for the installation of a septic system to serve the building intended by plaintiff to be constructed on the locus. After March 5, 1979, the plaintiff was notified by the Building Inspector of the Town of Chatham that a permit for the construction of a guest house on the locus in the location proposed by the plan submitted was denied because the proposed location was a violation of that provision of Appendix II of the By-law listed under Minimum Building Setbacks, Fresh and Saltwater and Wetlands requiring a setback distance of twenty-five (25) feet and in footnote 7 of that setback requirement which provides in pertinent part that "a wetland shall be as described under Section 3.44 Paragraphs 1 and 2, and defined in Section 1.63."

13. Section 1.63 of the Chatham Zoning By-law provides the By-law's definition of "inland wetland" and provides: "any marsh, meadow or swamp bordering on inland waters or that portion of any bank which touches any inland waters, or any marsh, meadow or swamp subject to flooding by fresh water or any areas of peat, muck or natural growth indicative of wetland".

14. Section 3.44 is encaptioned "Conservancy Contour Line Bounds":

"1. Coastal Wetland Conservancy Districts shall be those areas lying below two feet (2') above mean high water, said areas being further delineated as following the contour line two feet (2') above the plane of mean high water around said areas. When a bank exceeds two feet (2') in height, the Conservancy District boundary shall be the top of the bank."

"2. All inland wetlands as defined in 1.63 are those areas lying below two feet (2') above the water level of water courses and/or ponds (elevation of water level of ponds as established for each pond and recorded in the Town Clerks' Office as a part of this By-law). When a bank of a pond and/or water course exceeds two feet (2') in height, the Conservancy District boundary shall be the top of the bank."

15. The Building Inspector of Chatham and the Selectmen of the Town of Chatham have informed the plaintiff that the setback provided in Appendix II from the wetlands as defined therein applies to all areas of wetland vegetation whether such areas are shown on the Protective By-law Map or not.

16. On March 8, 1979 the Plaintiff appealed to the Department of Environmental Quality Engineering as provided in M.G.L.A. Chapter 131, Section 40, because of the failure of the Chatham Conservation Commission to issue an order within twenty-one (21) days of the date of the hearing held as a result of the Notice of Intent filed by the Plaintiff.

17. After hearing the Department of Environmental Quality Engineering issued a Superseding Order together with a sketch which are attached hereto as Exhibit Q.

18. On March 28, 1980, an application to the Town of Chatham Board of Appeals was filed (see copy attached and incorporated herein as Exhibit N) requesting a determination that Appendix II does not apply, and a variance under paragraph 6.42 (c) section 50 of the Protective By-law. After hearing held on May 7, 1980, the Board of Appeals filed its decision with the Town Clerk on May 21, 1980 upholding the decision of the Building Inspector. A copy of the minutes of that meeting and a copy of the decision filed with the Town Clerk are attached hereto and incorporated herein by reference as Exhibits O and P.

19. The soil and vegetative condition of the locus does not generally affect the zoning district in which the locus is located.

20. Harold Swetland, the Building Inspector of the Town of Chatham, notified the agents of the plaintiff that his determination of the location of the setback line from the "wetlands" on the locus would be determined exclusively by the determination of the Conservation Commission of the Town of Chatham as to the location of the edge of the alleged wetland (attached hereto as Exhibit R, the letter of Alice Hiscock of the Conservation Commission to the Building Inspector dated April 6, 1979).

The above Statement of Agreed Facts does not refer to Section 3.43 of the By-law, but since the By-law is Exhibit D-1 to the Statement all relevant provisions have been studied by the Court. Section 3.43 reads as follows:

3.43 Location

Conservancy Districts are designated specifically on the Protective By-law Map as most recently amended to include all of the salt water shoreline of the Town and inland water, swamp, marsh or wetland as defined in 1.63 and identified on the United States Geological Map 1947 by number and recorded by corresponding said map and notes on file in the Town Clerk's Office. The Building Inspector may require sufficient topographic data in order to establish the exact location of any contour line bounding a Conservancy District in order to establish the precise location of said line on any lot affected thereby before issuing a building permit for any building or structures to be located thereon.

The portion of a lot lying within a Conservancy District shall be considered a part of the lot in computing the lot area for compliance with the square footage requirements.

All Commercial fishing, marine facilities and boatyards in operation in 1973 and continuously thereafter are excluded from the Conservancy District.

The solution to the present question appears to lie in the proper interpretation of sections 1.63, 3.43, 3.44(b) and Appendix II to the By-law;

an attempt to read, reconcile these provisions and understand their intent is not without difficulty. For example, section 3.43 provides that "the portion of a lot lying within a Conservancy District shall be considered a part of the lot in computing the lot area for compliance with the square footage requirements" whereas Appendix II subparagraph (11) states "Minimum lot area shall not include any portion of a Conservancy District." This conflict is not important in the present case other than to illustrate the problems inherent in construing the By-law. It is well established that all provisions of a by-law should be read together and where possible, to give effect to each and to uphold the validity of the whole. Every petitioner who attacks the validity of a Zoning By-law bears a heavy burden. The test for weighing the validity of a by-law affords the Town's enactment every presumption in favor thereof, and if its reasonableness is debatable, the judgment of the local authorities must prevail.

While G.L. c. 40A, sec. 2 specifically outlines the limitation of particular sizes and uses of buildings required to meet the purposes of the Enabling Act, by implication and case law it can be shown that if a by-law is found to be confiscatory or to unreasonably interfere with a landowner's right under the police power for the public benefit, or is a deprivation of private property without compensation, it will be found to be invalid. See, **Jenckes v. Building Commissioner of Brookline,** 341 Mass. 162 (1960), **Aronson v. Sharon,** 346 Mass. 598 (1964), **MacNeil v. Avon,** Mass. App. Ct.[2] However, as noted above, the presumption is in favor of the validity of the by-law which will be upheld unless the property owner sustains the heavy burden of showing that it is in conflict with the provisions of the enabling act

or is subject to constitutional attack. **Pierce v. Wellesley,** 336 Mass. 517 (1957), **Anderson v. Wilmington,** 347 Mass. 302 (1964). "It (the by-law) will be sustained unless there exists no substantial relation between it and the expressed purposes of the statute. Conversely, it will be held invalid if it be arbitrary or unreasonable, or substantially unrelated to the public health, safety, convenience, morals or welfare." **Anderson v. Wilmington, supra,** at 303.

It cannot now be doubted that local regulation of wetlands is permissible either under the zoning by-law or as an exercise of the police power and that the State has not pre-empted the field with the enactment of Chapter 130A. See **Golden v. Town of Falmouth,** 358 Mass. 519 (1970); **Turnpike Realty Co. v. Dedham,** 362 Mass. 221 (1972); **S. Volpe Co. v. Board of Appeals of Wareham,** 4 Mass. App. Ct. 357 (1976). Granted that this is so, nonetheless the By-law must be framed in such a way that the standards to be met are clear both to the regulatory authority and to those subject to its jurisdiction. **O'Connell v. Brockton Board of Appeals,** 344 Mass. 208 (1962); **Senn v. Board of Selectman of Acton,** 357 Mass. 606 (1970); **MacGibbon v. Board of Appeals of Duxbury,** 356 Mass. 635 (1970); **Castle Estates, Inc. v. Park and Planning Board of Medfield,** 344 Mass. 329 (1962). The difficulty with the Chatham By-law which requires a twenty-five foot setback of residential buildings from any inland wetland is found in the definition of an inland wetland as defined in Section 1.63. The first three categories present no difficulty for it is easy to understand them and to relate them to the situation on the ground:

[2] 1981 Mass. App. Ct. Adv. Sh. 1287.

i.e. Any marsh, meadow or swamp bordering on inland waters or that portion of any bank which touches any inland waters, or any marsh, meadow or swamp subject to flooding by fresh water -

but it is the last phrase of the definition which was applied in the present case which is unenforceable for vagueness and lack of standards, i.e. "any areas of peat, muck or natural growth indicative of wetland." Firstly, it is left to the imagination of the Building Inspector as to what comprises "an area" of supposed wetland with no indication as to what might be a **demimmis** area. "Muck" is a peculiarly descriptive childhood term, which, if not legal, can be ascertained on the ground. The other criterion of a wetland in this phrase "natural growth indicative of wetland" led to three different determinations by the three experts who viewed the locus. While certainly not conclusive this difference of opinion is symptomatic of the ills of sec. 1.63. The constitutional problem with sec. 1.63 would be resolved, however, if the regulation of inland wetlands were limited to those within a Conservancy District, for the landowner could ascertain from the records of the Town Clerk's Office whether his property fell within such a district. Section 3.43 of the By-law specifically provides that Conservancy Districts include "inland wetland consisting of all portions of the Town bordering inland water, swamp, marsh or wetland as defined in 1.63 and **identified on the United States Geological Map 1947 by number and recorded by corresponding notes, said map and notes on file in the Town Clerk's Office"** (underlining added). The provision that Conservancy Districts include sec. 1.63 wetlands shown on the specified map is reasonable; if this requirement were

read as an integral part of the definition of an inland wetland, it would save the provision applicable here from its facial invalidity. While Appendix II is framed in terms of sec. 1.63 definitions, it does state in footnote (7) that "wetland shall be as described in Section 3.44 paragraphs 1 and 2, and defined in Section 1.63." Section 3.44 is clearly tied into the bounds of a Conservancy District. The conclusion seems inescapable that it was only to an inland wetland within a Conservancy District as located in 3.43 that the setback provisions were to apply.

On all the evidence I therefore find and rule that the setback provisions of Appendix II to the Chatham Zoning By-law as in effect at the time of the trial relative to inland wetlands apply only to such lands within a Conservancy District located as provided in Section 3.43 and were not applicable to the plaintiff's property. Accordingly, he is not to be denied a building permit for the proposed guest house on the ground that it is within twenty-five feet of an inland wetland. I reach my decision without reaching the problem as to whether the Building Inspector properly can rely on the decision of the Conservation Commission as to what constitutes a wetland without the exercise of his independent judgment.

At the time of the trial a possibility existed of the amendment at the then approaching town meeting to include locus within a Conservancy District. Counsel has since informed the Court that said Amendment was adopted, but that all parties, through their attorneys, have agreed that locus is not subject to the change in zoning by virtue of the provisions of G.L. c. 40A sec. 6.

In the decision reached in the Land Court case I have concluded that the plaintiff is not barred by the provisions

of Appendix II relative to the minimum setback applicable to inland wetlands from the issuance of a building permit since his premises were not located within a Conservancy District. This conclusion obviates the necessity of the plaintiff's pursuing further his petition for a variance. If I am incorrect, however, in my interpretation of the By-law, I do not find sufficient evidence as set forth both in the Statement of Agreed Facts or on the ground as traversed at the view to meet the statutory requirements for a variance as set forth in General Laws, c. 40A sec. 15.

Judgment accordingly.

Dated: September 11, 1981.

**Marilyn M. Sullivan, Justice**