ALFRED MARSHALL vs. TOWN OF TOPSFIELD.

Suffolk. December 9, 1981. — April 16, 1982.

Present: ARMSTRONG, PERRETTA, & KASS, JJ.

*Zoning*, Validity, Spot zoning.

Where a town's zoning by-law amendment creating a new Business District Park zone could be construed to avoid an irrational result regarding the dimensional requirements of lots in the zone, and where the town had a reasonable basis for establishing the new zoning classification, the fact that a landowner's property was reduced in value since it could no longer be used for retail purposes and by reason of the dimensional requirements imposed by the amendment did not render the new by-law confiscatory. [426-429]

An amendment to a town's zoning by-law which created a business district park zone of 137.34 acres of land and included nineteen land parcels along certain natural boundaries was not invalid as "spot zoning," on the theory that the rezoning was for the individual benefit of a single landowner, where such individual owned but one parcel of land constituting 16.8% of the land area in the zone and suffered the same adverse economic consequence as the other landowners in the zone. [429-430]

PETITION filed in the Land Court Department on August 30, 1978.

The case was heard by *Randall*, J.

*William G. Evans*, Town Counsel, for the defendant.

*Israel Bloch* for the plaintiff.

KASS, J. By a complaint under G. L. c. 240, § 14A, as amended through St. 1977, c. 829, § 14, and G. L. c. 185, § 1 (j ½), as amended through St. 1978, c. 478, §§ 81 and 82, Marshall, a landowner in Topsfield, sought a determination of the validity of certain zoning by-law amendments which Topsfield adopted in 1978 at its annual town meeting. As to a newly created Business District Park (BDP) zone, Marshall claimed that the by-law, by reason of the dimen-

sional requirements it imposed on the locus, made his land essentially valueless and that the by-law was, therefore, confiscatory. Marshall also attacked the by-law amendment as spot zoning.

A Land Court judge found in favor of Marshall on each of these points and in favor of the town on an asserted deficiency in the notice of the proposed by-law amendment and an asserted entitlement, under G. L. c. 40A, § 7A, as amended by St. 1965, c. 366, § 1,[1] to the benefit of preexisting zoning provisions. The town appealed. Marshall did not cross appeal from the portions of the judgment adverse to him and the issues they present are not before us. *Town Taxi, Inc.* v. *Police Commr. of Boston*, 377 Mass. 576, 579 (1979). *Noyes* v. *Quincy Mut. Fire Ins. Co.*, 7 Mass. App. Ct. 723, 725 (1979). Compare *O'Connor* v. *City Manager of Medford*, 7 Mass. App. Ct. 615, 616-618 (1979).

1. *Was the Zoning By-law Inherently Unreasonable and Confiscatory?*

Marshall's land contained 7.3 acres located along the westerly sideline of the Newburyport Turnpike. The frontage was 910 feet. Under a zoning by-law adopted by Topsfield in 1947 and until the by-law in controversy in this case became effective, the first 200 feet of the locus back from the Newburyport Turnpike was in a business district in which retail uses were permitted. The remainder of the property was in a zoning district called Inner Residential and Agricultural.

On May 9, 1978, the inhabitants of the town, at their annual meeting, adopted a comprehensive recodification of their zoning by-law.[2] Among the substantive changes worked by the new by-law was that Marshall's land could

---

[1] Similar statutory provisions now appear in G. L. c. 40A, § 6, sixth par., there inserted by St. 1975, c. 808, § 3.

[2] From a comparison of the 1947 Topsfield zoning by-law with the one adopted in 1978, we deduce that a major purpose of the revision of the by-law was to achieve compliance with St. 1975, c. 808, § 7, as amended by St. 1977, c. 829, § 4.

no longer be used for retail purposes. Therein lies Marshall's grievance and the source of this action. Under § 2.09 of the 1978 zoning code, Marshall's land was now entirely in a Business District Park zoning classification, in which professional and business offices, manufacturing, construction industry, and research and development activities are permitted uses. Severe dimensional requirements, however, pertain in the new BDP zone: e.g., minimum lot depth is 400 feet, minimum front setback is 150 feet and minimum rear depth is fifty feet. The locus is 400 feet deep or more only at its extreme north. Consequently any building for a permitted commercial use would be awkwardly situated on the lot, some 360 feet long, and no more than forty-five feet deep. As the Land Court judge observed, the largest building which Marshall would be permitted, as of right, to build in the new zone would look like the side view of a dinghy bottom up.

In addition to uses permitted of right in the new BDP zone, "[a]ll uses in the Outlying Residential or Agricultural District [ORA] permitted by right or by permit . . . shall be permitted in the same manner in [the] Business District Park." This provision opened up Marshall's land for use for one-family dwellings; various community facilities such as, but not limited to, nursery school, day care center, tennis club, nursing home, and educational use; lodging house; communications and telephone tower; and, of course, agricultural uses, including farm products stand, commercial kennels, stables and veterinary hospital.

To the words "shall be permitted in the same manner in [the] Business District Park" the Land Court judge ascribed the subjection of all ORA uses to the severe dimensional requirements of the BDP district. The result would be that any use permitted in the ORA zone, e.g., a single family house, would require a lot of at least 200,000 square feet. By this route the judge came to the conclusion that the BDP zone (i.e., §§ 2.09 & 3.06 of the by-law) was irrational and confiscatory. See *Gem Properties, Inc.* v. *Board of Appeals of Milton*, 341 Mass. 99, 105 (1960); *Jenckes* v. *Building*

*Commr. of Brookline,* 341 Mass. 162, 166 (1960); *MacNeil v. Avon,* 12 Mass. App. Ct. 179, 182-183 (1981), further appellate review granted, 384 Mass. 817 (1981).

Every presumption, however, must be made in favor of the validity of the zoning by-law, and great weight given to a town's determination that necessity exists for its adoption. *Jenckes* v. *Building Commr. of Brookline, supra* at 166. *MacNeil* v. *Avon, supra* at 180, and cases cited. In aid of the presumption of validity zoning by-laws are to be construed so as to avoid unreasonable results. *Green* v. *Board of Appeal of Norwood,* 358 Mass. 253, 258 (1970), and cases cited. *Parseghian* v. *Board of Zoning Appeal of Cambridge,* 7 Mass. App. Ct. 879 (1979). In the instant case it is possible to avoid an irrational result by giving to the ambiguous text of § 3.06 what is, in any event, the more plausible reading, viz., that the phrase "in the same manner" refers to the dimensional requirements which apply to ORA uses in the ORA district. In that event a minimum lot size of 87,120 square feet and a minimum front yard requirement of twenty feet would apply to the use of Marshall's land for purposes allowed in the ORA zone.

Nor were the dimensional requirements of the BDP zone themselves without reason. One Harris, who had been chairman of the planning board when the new code was drafted, testified that the board had established the new zoning classification to attract some light industry to Topsfield and that the North Street area, in which the locus is located, was one of two areas in town where that might be accomplished. The large lot requirement, Harris said, was an effort to accomplish that objective by providing an incentive for land assembly. In its report to the town meeting, the planning board expressed its belief that the amendments it was proposing would encourage orderly growth. See *Addison-Wesley Publishing Co.* v. *Reading,* 354 Mass. 181, 186 (1968). North of the Marshall land the BDP zone widened so that the 400-foot depth requirement became substantially less onerous. Whatever we might think of the efficiency or wisdom of the means chosen by the town to

achieve its objective or to lessen traffic congestion on the Newburyport Turnpike, another avowed municipal purpose, we do not substitute our judgment for that of the town. *Pierce* v. *Wellesley*, 336 Mass. 517, 521 (1957). *Turnpike Realty Co.* v. *Dedham*, 362 Mass. 221, 233 (1972), cert. denied, 409 U.S. 1108 (1973).

It is familiar law that reduction in value of real estate by reason of a zoning code amendment does not render the amendment confiscatory. See *Simon* v. *Needham*, 311 Mass. 560, 565 (1942); *Massachusetts Broken Stone Co.* v. *Weston*, 346 Mass. 657, 661 (1964); *Monaghan* v. *North Reading*, 7 Mass. App. Ct. 922 (1979). In the instant case Marshall is left with more obvious possibilities for economic exploitation of his property than was the case in *Turnpike Realty Co.* v. *Dedham*, 362 Mass. at 235-236; *Monaghan* v. *North Reading, supra;* and *S. Kemble Fischer Realty Trust* v. *Board of Appeals of Concord*, 9 Mass. App. Ct. 477, 481- 482 (1980), cert. denied sub nom. *Costello* v. *Board of Appeals of Concord*, 449 U.S. 1011 (1980).

2. *Spot Zoning.* There were nineteen parcels located in the newly created BDP district. In the aggregate, they contained 137.34 acres. The new zone stretched from its beginning point along the Newburyport Turnpike to the Ipswich line. The Ipswich-Topsfield line, North Street, and the Newburyport Turnpike were natural boundaries. Consequently the BDP district had not the procrustean boundaries or singling out of a particular parcel which are hallmarks of spot zoning. *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 361-362 (1973). Compare *Schertzer* v. *Somerville*, 345 Mass. 747 (1963); *Canteen Corp.* v. *Pittsfield*, 4 Mass. App. Ct. 289, 293-294 (1976).

There was evidence that the portion of town included in the BDP zone had been devised to neutralize political opposition from one Greenwood, the owner of a 23.1 acre parcel in the new zone. Greenwood had, the Land Court judge found, opposed an earlier attempt to eliminate "commercial activity along Route 1 (the Newburyport Turnpike)" and

that "[i]n creating the [BDP] the town in effect placated Greenwood by allowing him to use his back acreage for business and professional uses in exchange for relinquishing the retail use of his Route 1 frontage." From that finding the judge made a leap to the conclusion that the rezoning was for the individual benefit of Greenwood and "may be considered a type of spotzoning." See *Beal* v. *Building Commr. of Springfield*, 353 Mass. 640, 644 (1968). It is a conclusion in which we do not join.

Greenwood's parcel constituted only 16.8% of the land area in the new zone and was only one of nineteen parcels in it. The town wanted retail use eliminated along this portion of the Newburyport Turnpike and Greenwood suffered that adverse economic consequence along with everybody else. That his parcel was of a shape and size more easily adaptable to the new zone's requirements than Marshall's does not support the inference that the purpose of the new BDP zone was to confer an economic benefit solely upon Greenwood — least of all in the context of the adoption of a wholly new zoning code by the town.

Parts two and three of the judgment are reversed and a modified judgment is to enter that the provisions of §§ 2.09 and 3.06 of the by-law adopted by Topsfield on May 9, 1978, are a valid exercise of the zoning power. Parts one and four of the judgment are affirmed.

*So ordered.*