Botsford, J.
The plaintiffs, Richard Annesse, William Cooke and Howard A. Allgaier, are land owners and developers in the town of Billerica (the town). They bring this action for declaratoiy judgment and injunctive relief to challenge a by-law of the town requiring the improvement of a private way as a condition of the issuance of an occupancy permit. Both parties previously filed cross-motions for summary judgment. Both motions were denied. The defendants, the town, its department of public works (DPW), and the director of the DPW, Richard Bento (the director), now move for reconsideration of their cross-motion for summary judgment. The plaintiffs also renew their cross-motion for summary judgment.
For the reasons set forth below, the defendants’ motion for reconsideration is ALLOWED; the defendants’ cross-motion for summary judgment is ALLOWED; and the plaintiffs’ cross-motion for summary judgment is DENIED.

BACKGROUND

The three plaintiffs are individual developers of residential dwellings in the town. During the early 1990s each plaintiff separately sought to obtain building permits for lots that were not part of any subdivision. At that time the town had (and currently has) in effect a by-law known as “the adequate access by-law” (by-law).[3] The by-law has been in force without substantive change since 1988. The by-law requires developers of land that abuts unaccepted ways[4] to improve those ways in conformance with DPW street standards.[5] All of the plaintiffs’ lots abutted unaccepted ways that did not meet DPW street standards. The unaccepted ways in question were also abutted by lots not owned by the plaintiffs, including some lots that had residences on them. The record does not make clear when these other residential lots were developed or why the developers were not also subject to the by-law.
Initially, the plaintiffs complied with the by-law by creating development plans for the unaccepted ways. The DPW approved the development plans and issued building permits conditioned upon the implementation of those plans. Annesse filed building permit applications on at least two occasions, May 6, 1991 and June 16, 1993. Permits were issued in response to these applications. Cooke and Allgaier had building permits issued to them in May of 1994. The plaintiffs proceeded to erect residential dwelling houses on their respective lots.
When construction was complete, each plaintiff individually sought to obtain occupancy permits for each residence. The DPW would not issue occupancy permits because the unaccepted ways did not comply with DPW standards. The DPW, however, at the request of the plaintiffs, allowed the plaintiffs to post bonds that would cover the cost of improvements in case the plaintiffs did not complete the improvements themselves. Notice of the collection of the bond monies was sent to each plaintiff on September 16, 1994.[6] The plaintiffs failed to bring the unaccepted ways into conformity with DPW street standards. The DPW no *494 tified the plaintiffs that it intended to use the bond money to finance the access road improvements. The by-law did provide for a waiver procedure from the DPW requirements, but none of the plaintiffs initially sought a waiver. Instead, the plaintiffs brought suit.[7]
In this court, both parties initially moved for summary judgment. On March 31, 1995, the cross-motions for summary judgment were denied on the grounds that genuine issues of material fact remained. It was also ordered that the case be stayed pending the outcome of waiver applications.
Each plaintiff took a different action in response to the court order. In May of 1995, Annesse sought a waiver for only one of his properties in question. He claimed that the improvements that he was required to make to the unaccepted way were not necessary because houses had existed on the unaccepted way before the enactment of the by-law (there had even been a house on his lot which he had demolished). The director denied the request for a certificate of waiver. However, the director stated that the DPW was willing to waive the DPW street standard requirements to some extent. The DPW would only require that a certain portion of the road be paved and bermed, and that a new water main be installed to service Annesse’s lot. The lot was currently being serviced by an allegedly inadequate water main. The director stated that the requirements that were being imposed would “constitute a significant departure from the full formal DPW standards, but represent an acceptable standard to meet the conditions necessary to provide adequate access and fire protection to the buyers of the new home that [Annesse had] constructed.” (Letter from the director to Annesse, dated May 11, 1995.) Furthermore, Annesse had agreed to make the improvements a condition of the issuance of the building and occupancy permits. The buyer of Annesse’s lot was claiming reliance on this condition and, therefore, threatening to sue both Annesse and the town if Annesse did not make the improvements.
As provided for in the by-law, Annesse appealed the director’s decision to the town’s board of selectmen (board). The board upheld the director’s decision. Annesse has not appealed the board’s decision. To date, the record contains no indication that Annesse has sought waivers on any other lots, although he owns several other lots that are in dispute.
In April and May of 1995, Cooke requested one certificate of waiver for all of his lots that he had developed up until that time. The director denied the request. He wrote to Cooke and told him that the full DPW street standards were already relaxed. Cooke knew of this because it was reflected in the approval of the unaccepted way improvement plan that Cooke previously submitted. The director cited poor drainage and risk to the residents’ quality of life as reasons for the improvements. Cooke appealed to the board. The board affirmed the director’s decision. Cooke subsequently filed a separate action in Suffolk Superior Court challenging the decision of the board. That action is still pending.
Allgaier did not apply for any waiver. Instead, he completed the improvements detailed in his improvement plan. On August 29, 1995, the defendants returned the bond that Allgaier had deposited with them.

DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989); Mass.R.Civ.P. 56(c). In this case, there are no material facts still in dispute; at issue is the validity of each parly’s legal claims. Summary judgment, therefore, is appropriate.[8]
The March 31, 1995, order issued by another justice of this court denying the parties’ cross-motions for summary judgment stayed the action pending exhaustion of administrative remedies. Since then, both Annesse and Cooke have undergone the administrative waiver process outlined in the by-law. Both appealed to the board, and both were unsuccessful. The administrative record of the waiver proceedings has been developed as the March 31, 1995 order mandated. While Allgaier did not pursue a certificate of waiver, it is unlikely that he would have prevailed, given the fate of both Annesse and Cooke. Even though Allgaier made the required improvements and received his bond payment back he is still an aggrieved party for the purposes of a declaratory judgment. If the by-law is invalidated, the requirement to make unaccepted way improvements will become illegal. Allgaier would then have been illegally charged with the duty to make those improvements. He has made a good faith claim that he may have suffered an infringement of a legal right. In the circumstances, all three plaintiffs are aggrieved parties whose claims are ripe. See Cummings v. City Council of Gloucester, 28 Mass.App.Ct. 345, 349 (1990).
The plaintiffs argue the by-law is unconstitutional because it violates the Takings Clause, Due Process Clause and the Equal Protection Clause of the United States Constitution. They also argue that there is no statutory authority permitting a municipality to force development of unaccepted ways, and, indeed, the by-law violates the Massachusetts Home Rule Amendment because it comes into direct conflict with several State statutes.
1. Federal Constitutional Claims
The Takings Clause of the Federal Constitution reads as follows: “nor shall private property be taken for public use without just compensation.” U. S. Const, amend. V. The question presented in this case is whether the by-law so unjustifiably intrudes on property rights that it rises to the level of a taking. A *495 regulation can violate the Fifth Amendment when it does not significantly further a legitimate state interest or if the owner is deprived of substantially all economically viable use of his or her land. Lucas v. South Carolina Coastal Council, 112 S.Ct. 2886, 2894 (1992). See Lopes v. Peabody, 417 Mass. 299, 304-05 (1994). In determining whether permit conditions are constitutionally valid, the United States Supreme Court has established a test that involves two steps. First, courts must establish whether an essential nexus exists between a permit condition and a legitimate state interest. Dolan v. City of Tigard, 114 S.Ct. 2309, 2317 (1994). Second, if an essential nexus is established, the courts must then decide whether the condition demanded is roughly proportional to the need of the development. Id., at 2319. The town has an interest in protecting the health, safety and welfare of its residents. Emergency equipment access, flood control, road erosion and traffic safety are all legitimate interests of the State. See id., at 2317, 2318. There is an essential nexus between adequate access and the ability of the town to protect its residents. Contrast Jenckes v. Building Commissioner of Brookline, 341 Mass. 162, 165-66 (1960).[9]
The by-law is roughly proportional to the needs of the plaintiffs’ lots. It requires developers to provide adequate access to their lots that abut unaccepted ways. There is no dispute that the required improvements will improve access to the plaintiffs’ lots. The DPW street standards are strict. However, the by-law provides for the ability to obtain a waiver from these standards. The director’s letters in response to the requests for waiver by Annesse and Cooke explained that they were not being required to conform fully to DPW street standards. The costs of making improvements were calculated using industry wide standards and obtaining the opinions of qualified engineers. “No precise mathematical calculation is required, but the [municipality] must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development.” Id., at 2319-20.
The plaintiffs have not been deprived of any due process rights. To prove a due process violation the plaintiffs would first have to establish a protectable property interest in the occupancy permits. See, e.g, RRI Realty Corp. v. Incorporated Village of Southhampton, 870 F.2d 911, 915-18 (2d Cir. 1989). Establishing a protectable property interest requires a showing that the town “lack[ed] all discretion to deny issuance of the permit or to withhold its approval. Any significant discretion conferred upon the local agency defeats the claim of a properiy interest.” Gardner v. Baltimore Mayor & City Council, 969 F.2d 63, 68 (4th Cir. 1992). The likelihood of issuance is irrelevant. Id. What matters is “the amount of discretion accorded to the issuing agency by law.” Id. A protectable property interest exists “only when the discretion of the issuing agency is so narrowly circumscribed that approval of a proper application is virtually assured.” RRI Realty Corp., 870 F.2d at 918. Discretion in this case is evident in the by-law’s provisions for DPW approval and waiver.
Even if the plaintiffs were to establish a property interest in the occupancy permit, the next step would be to establish that the town’s actions were arbitrary and capricious. See Cordeco Dev. Corp. v. Vasquez, 539 F.2d 256 (1st Cir. 1976) (finding that the issue of arbitrary and capricious action must be addressed regardless of property interest inquiry). See also Crittenton Hastings House of the Florence Crittenton League v. Board of Appeals of Boston, 25 Mass.App.Ct. 704, 715 (1988). This analysis, however, only requires the employment of the rational basis test. See Williamson v. Lee Optical, Inc., 348 U.S. 483, 487-88 (1955). Actions by a government “will withstand substantive due process attack unless it ‘is not supportable on any rational basis’ or is ‘willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.’ ” Pearson v. City of Grand Blanc, 961 F.2d 1211, 1221 (6th Cir. 1992) (citations omitted).
Denying occupancy permits, as well as building permits, is well within the town’s power. See G.L.c. 41, §72; G.L.c. 41, §81P. See also Hamilton v. Planning Bd. Of Beverly, 35 Mass.App.Ct. 386, 388-89 (1993) (holding that “acceptance not required” endorsement is not a guarantee of building permit issuance). The requirement of adequate access is consistent with the welfare of the occupants of the dwellings located on the private roads. Cf. G.L.c. 41, §81M. As the administrative action in the record indicates, the by-law permits the town to be responsive to the facts of the particular case; here, the building commissioner required only partial compliance with DPW standards. Both the welfare of the town and the hardship on the plaintiffs were considered. The defendant’s actions were neither arbitrary nor capricious.
The by-law affords the plaintiffs procedural due process. The administrative review process includes the ability to request a waiver and access to an appeal process. The plaintiffs had notice of the adequate access conditions before they were issued building permits. They had an opportunity to apply for a waiver and otherwise to challenge the applicability of the by-law to their developments. They were given all the process to which they were entitled. See Mathews v. Eldridge, 424 U.S. 319 (1976).
To prevail on equal protection grounds the plaintiffs must establish that they are a suspect class, their fundamental rights have been violated, or there is no conceivable rational basis for the municipality treating the plaintiffs in a different manner than other developers. See Pennell v. City of San Jose, 485 U.S. 1, 14 (1987); Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1980). The plaintiffs do not fall within *496 a suspect class, and they have not identified any fundamental right that has been violated. See Pennell, 455 U.S. at 14. Therefore, the plaintiffs must overcome the rational basis in order to prevail on this claim. This they cannot do. The town has treated both the plaintiffs and other developers in the town consistently. All developers are required to provide adequate access to projects that are not on public ways. Compare G.L.c. 41, §81M (subdivision control law) with Billerica Gen. By-law, Art IV, sec. 6 (1993). The reason for the adequate access condition is to protect the welfare of the occupants of the developments. The plaintiffs are not being singled out in any way. The by-law has a rational basis.
2. State Law Claims
The Home Rule Amendment (HRA) provides: “Any city or town may, by the adoption, amendment, or repeal of local ordinances or by-laws, exercise any power or function which the general court has power to confer upon it, which is not inconsistent with the constitution or laws ...” Mass. Const. Amend. Art. 89, §6. See G.L.c. 40, §21; G.L.c. 43B, §13. Under the HRA towns may adopt by-laws that do not conflict with State or Federal laws.
The town has promulgated the by-law under its power granted by the HRA. In order for a State or Federal law to preempt the by-law “legislative intent to preclude local action must be clear.” Bloom v. Worcester, 363 Mass. 136, 155 (1973). Either the legislature specifically excludes local action or the legislation so fully pervades the area that the by-law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives”[10] of the legislation. See id. at 155.
The plaintiffs point to several laws that allegedly preempt the by-law, focusing in part on G.L.c. 79 through 80A, which address governmental eminent domain powers and betterments. No section in these chapters specifically prohibits the conditions of the by-law. The purpose of G.L.c. 79 is to set a uniform standard when land is taken for public purposes. Since I have found the conditions imposed by the by-law not to be a taking, G.L.c. 79 becomes irrelevant. Relocation assistance, G.L.c. 79A, has no bearing on a condition precedent to the issuance of a building or occupancy permit. The provisions of G.L.c. 80, which govern betterments, apply when a town wishes to allocate the cost of public improvements. Judicial proceedings mandated by G.L.c. 80A provide another avenue for the State to take property for public purposes; the statute does not purport to create conditions for the improvement of private property.
The plaintiffs also point to G.L.c. 82, c.84, §§12-14, and c.40, §6N. Chapter 82, dealing with town highways, does not prohibit conditional issuance of building or occupancy permits. Chapter 84, §§12-14, concerns the rights of proprietors of a private way or bridge to seek contributions for repair and maintenance of the way (or bridge) from each other. These statutes do not conflict with the town’s requirement that developers build or improve roads to provide adequate private and emergency public access to their developments. Finally, allowing the town to make temporary repairs to private ways (see G.L.c. 40, §6N) has no direct bearing on the power of the town to condition a building permit on the developer’s provision of access to the developed property. The by-law does not frustrate the purposes of any of these State statutes, and insofar as the by-law protects the welfare of the town and citizens, it is consistent in purpose with the above named statutes.

ORDER

For the foregoing reasons, it is hereby ORDERED that the defendants’ motion for summary judgment be ALLOWED, and the plaintiffs’ cross-motion for summary judgment be DENIED.

The Billerica adequate access by-law in effect at the times relevant to this case was codified in the town’s general by-law, Article IV, §6. The relevant parts read as follows:
SECTION 6. ADEQUATE ACCESS
This by-law shall govern the use of unaccepted ways, excluding those ways approved under the Subdivision Control Law, for access to building lots in the Town of Billerica. All new buildings, excluding accessory structures, additions, and alterations, shall have frontage on ways which provide adequate access. Unaccepted ways shall meet the Department of Public Works street standards in order to be judged adequate.
No building permits shall be issued until plans for construction of the way have been approved by the Department of Public Works Director. The layout and design of the way shall be stamped by a Professional Engineer and shall demonstrate compliance with the Department of Public Works street standards. The way shall be improved from the nearest way in existence, which meets standards acceptable to the Director of Public Works, for the entire length of the way up to and including the minimum lot frontage required under zoning.
No occupancy permit shall be issued until the road is complete and in full compliance with Department of Public Works standards. A bond or other form of security cannot act as a substitute for completion of the way . . .
The Department of Public Works Director may grant a Certificate of Waiver from Department of Public Works standards in cases where the unaccepted way meets acceptable construction standards at the time of permit application. If a request for a Certificate of Waiver is denied, the Department of Public Works Director will issue a denial letter. The decision to approve or deny may be appealed within twenty (20) days of the decision date to the Board of Selectmen by either the applicant or any property owner along the subject way. Failure to act on the appeal within thirty (30) days of receipt shall constitute constructive approval. . .
This by-law was recodified as Billerica Gen. By-law, Art IV, §3.6, on May 10, 1994. However, the by-law was not changed substantively.

An unaccepted way is a street that is not a public way but also does not come under the jurisdiction of the subdivision control law. See G.L.c. 41, §81M.

The DPW street standards outline design criteria and permitting and licensing requirements.

The bond amounts in the September 16th letters were listed as: Annesse, $35,700; Cooke, $75,400; Allgaier, $9,000.

On October 5, 1994, the plaintiffs filed this action in the Land Court. The Land Court held that it did not have subject matter jurisdiction over the by-law because it did not involve zoning. The case was transferred to this court on October 20, 1994.

This court has the power to reconsider a previous denial of summary judgment under the proper circumstances. King v. Globe Newspaper Co., 400 Mass. 705, 707-08 (1987). Denial of summary judgment is not a final judgment. Peterson v. Hopson, 306 Mass. 597, 601 (1940). The right to reconsider or alter a prior decision remains with this court until final judgment is rendered. Riley v. Presnett, 409 Mass. 239, 242 (1991).

In Jenckes, the defendant town applied to the plaintiff a zoning by-law prohibiting construction of a residence on a private way less than 40 feet wide, even though the particular way, which was 30 feet wide, had been open to and used by the public for 50 years and before the zoning enabling act took effect. The court concluded that this application constituted a prohibited taking in the circumstances, pointing out that: there were at least 12 lots with residences on them already located on the way; the record contained no evidence that widening was necessary for any purpose, including public health or safety, nor any indication that the plaintiffs proposed building would create or substantially increase any danger to public health or safety; the way could not be widened without the town itself exercising its power of eminent domain; and application of the by-law rendered the plaintiffs lot completely unusable in any practical sense. Jenckes v. Building Comm’r of Brookline, 341 Mass. 162, 164-66 (1960). The situation presented here is very different from Jenckes. This is a facial challenge to the validity of the by-law. Moreover, the by-law at issue does not prohibit the proposed buildings but simply conditions the issuance of building and occupancy permits on the improvement of private ways. There is no evidence at all that any of the plaintiffs is unable on his own — without the town’s eminent domain power — to comply with the by-law.

Bloom v. Worcester, 363 Mass. 136, 151 (1973) (quoting Hines v. Davidowitz, 312 U.S. 52, 67).